PITTMAN, Justice,
for the Court:
Marcus and Etta Mae Berry have appealed from a judgment entered against them in the Hinds County Circuit Court, in favor of John Player, for actual and statutory damages in the amount of Eighty Thousand Twenty-Eight Dollars ($80,028.00). *896 Player sued the Berrys, Pearl River Forest Products, and Stringer Lumber Company, alleging trespass and the willful and intentional cutting of trees on Player’s property. The Berrys base their appeal on fifteen assignments of error from the trial below. Finding no reversible error, we affirm.
The property in dispute in this case (“Subject Property”) is a twenty-acre tract of land located south of Raymond, Mississippi, with the legal description being the W ½ of the NE ¼ of the SE lk of Section 36, Township 4 North, Range 3 West of Hinds County. The Subject Property is located adjacent to property owned by Marcus and Etta Mae Berry since 1982. The Berrys’ property, and allegedly the Subject Property, are part of a tract known as the Tom Bacot Place, as the tract had been owned for years by the Bacot family.
Record title to the Subject Property is in John Player’s name. Fred Washington and his family had record title to the Subject Property for a number of years. Player obtained deeds to an undivided interest in the Subject Property from several of the Washington heirs. A partition proceeding was later instituted by one of the Washington heirs to partite land to which the Washington family had title. The Subject Property was one of the parcels included in this proceeding. John Player was named a party to the partition proceeding. Neither Marcus nor Etta Mae Berry nor heirs of the Bacots were made parties to this proceeding. A final decree in the partition proceeding, filed September 15, 1976, awarded record title to the Subject Property to John Player.
In 1982 the Bacot Place was owned by Mae LeBlanc, one of the Bacot heirs. She desired to sell it, and Marcus Berry wanted to purchase it, as it adjoined property he had owned since 1952. Berry negotiated with Bill Bacot, Mrs. LeBlanc’s nephew. According to Berry, once they agreed on a price and terms, Bill Bacot mailed him a hand-written sales agreement confirming the sale. The sales agreement, which was not allowed into evidence by the trial court, purported to sell 364 acres, known as the Tom Bacot Place, for $210,000.00. Berry testified that he understood the Tom Bacot Place to include the Subject Property, and as a result Berry felt he purchased the Subject Property. Berry received a warranty deed from Mrs. LeBlanc, although the legal description on the deed did not include the Subject Property.
Berry testified at trial that he had understood since his arrival in the area in 1952 that the Bacot Place included the Subject Property. One of Berry’s employees, Charlie Christian, testified at trial that his belief was that the Bacot Place included the Subject Property. Christian grew up in the immediate area and lived there until 1938, and then visited intermittently until 1960, when he returned to live in the area. Several other witnesses, including Walter Ratliff, Excell Christian, Fred Robinson, Fred Jones, John Singleton, Clarence Kent, Jr., and Willie Christian testified with varying degrees of certainty that they had always considered the Subject Property to be part of the Bacot Place and had never known anyone to use it except the Bacots or their lessees. Walter Ratliff had worked on the land for more than 10 years and had never known anyone to use the land except Tom Bacot or V.L. Scott, with Bacot’s permission. Ratliff never knew Fred Washington or any of his family to use the Subject Property. The other witnesses corroborated Ratliff’s statements, but many had been away from that area for many years, were elderly, or had ties to Marcus Berry, such as being his employees.
In the latter part of 1982, Berry began making inquiries as far as selling the timber on what he perceived to be his property, including the Subject Property. He first discussed this with a representative of the St. Regis Paper Company, who informed Berry for the first time that there was land which Berry perceived to be his that was not included on his deed. Berry consulted with two attorneys, Robert Ferguson and George Myles, and left with the impression that the Subject Property was his. As a result, Berry built a new fence around what he considered to be his property, an area which included the Subject Property. He said that he encountered no *897 objections from anyone in building the fence.
Berry later contacted Brown Hairston, a timber consultant with James M. Varda-man and Company. Hairston testified that Berry told him that there was some property in dispute on the tract. Hairston checked the land records and found this to be true. Hairston wrote Berry, including a map of the tract, saying that he would buy the timber for a 10% commission, but refused to buy the timber on the disputed tract. Berry turned down the offer, claiming that the price was unsatisfactory.
Berry then came into contact with H.A. Stringer of Stringer Lumber Company. Stringer testified that he went out to Berry’s property and walked out on the tract with Berry. Stringer claims that he was told to cruise (make a lumber count) to the fence which surrounded the property. Stringer never returned to the property and did not do the cruise himself. He said that Berry never mentioned any land being in dispute and that he never saw a legal description of the property until the deal was closed. Stringer paid Berry $57,000.00 for the hardwood on the property and received a timber deed and contract. Berry also met with representatives of Pearl River Forest Products, particularly Joe Stringer, brother of H.A. Stringer. Pearl River was interested in the pinewood on the tract. Joe Stringer met with Berry subsequent to Berry’s meeting with H.A, Stringer. Joe Stringer and his partner, Richmond Magee, performed the cruise on the Berry property. According to Joe Stringer, Berry showed them the fence bordering his land on the south and told them to cruise to the fence and cut to the fence. Joe Stringer testified that the only time that he ever heard of any land being in dispute was at the closing, to which Berry replied that there was nothing to worry about because he had had the land under fence for a long time.
Berry’s version of his meetings with the Stringers differs in several key respects. Berry testified that he specifically mentioned to H.A. Stringer that there was land surrounded by his fence that he did not have a deed to. Berry also testified that immediately after their initial meeting, H.A. Stringer came to his house and copied a legal description of his property, not including the Subject Property, off the warranty deed he had received from Mae Le-Blanc. Etta Mae Berry corroborated this testimony. H.A. Stringer could not recall this happening.
The closing of the agreement was held at George Myles’ office on April 30, 1985. Emory Morgan, attorney for Pearl River Forest Products, Joe Stringer, H.A. Stringer, George Myles, and Marcus Berry were present. Emory Morgan prepared a title opinion in which he stated that the Berrys had record title to the land described in their warranty deed and in the timber deeds and timber contracts. This did not include the Subject Property. The timber deeds and the timber contracts were both drawn up by Emory Morgan, the attorney for Pearl River. Both timber deeds and the Stringers’ timber contract contained a legal description of the Berry property which did not include the Subject Property. However, these documents also contained the following words:
The Grantors shall cut the timber inside the fences and will cut and remove said pine timber in a more or less “clean cut” manner in order to allow the Grant- or to follow up with a dozer, but the Grantor is not to interfere with the Grantee in his follow-up work with the dozer.
That the Grantee shall not have the right to cut timber over the line of the above-described property.
According to Joe Stringer, Emory Morgan brought up the problem of the disputed property at the closing. H.A. Stringer said that he did not remember it being brought up, but that it could have been. Neither Stringer Lumber nor Pearl River ever surveyed the area to determine where the exact property lines were.
The timber was cut on the Subject Property in the summer of 1985. Player first discovered that the timber had been cut on August 5, 1985. He went out to the property, complained to the loggers present, *898 and told them to stop cutting. Player then went to Marcus Berry’s house and confronted him about the cutting, as the loggers had told Player that they were acting under Berry’s instructions. During the confrontation each man reiterated his belief that he was the rightful owner of the Subject Property.
John Player filed suit against Marcus and Etta Mae Berry, Stringer Lumber and Pearl River Forest Products in Hinds County Circuit Court on October 10, 1985, alleging that the defendants had intentionally cut the timber on his property. The Berrys answered, asserted an affirmative defense of good faith based on adverse possession, and counterclaimed for title to the Subject Property based on adverse possession. Pearl River answered and cross-claimed against the Berrys, but the cross-claim was later dismissed. Player answered the Ber-rys’ counterclaim and denied that the Ber-rys had become owners of the land through adverse possession. Stringer Lumber answered Player’s complaint, stating that they had been following Berry’s orders when they cut the timber, and cross-claimed against the Berrys on the same grounds. The Berrys answered Stringer Lumber’s cross-claim and counterclaimed against Stringer Lumber, saying that they had only sold the timber described on the timber contract and deed to Stringer Lumber, and Stringer Lumber was responsible for cutting the timber off the wrong property. Stringer Lumber answered and denied the allegations of the Berrys’ counterclaim. The Berrys filed a pretrial motion asking that the results of the partition proceeding, by which Player had received record title to the Subject Property, be excluded from the evidence at trial. This motion was denied. Player filed a motion in limine concerning evidence of the mental conditions of the Washington heirs. The motion to exclude such evidence was granted by the trial court.
This cause was heard before a jury on September 24-26, 1986. During the trial, the trial court declared that it did not have the authority to adjudicate title to real property, and dismissed the Berrys’ counterclaim for adverse possession, but allowed the good faith defense based on the same grounds. The record does not reflect an effort by the Berrys to have this cause or any part of it transferred to chancery court.
The jury found for John Player and solely against the Berrys for actual damages of $71,225.00 and statutory damages of $71,225.00. The verdict was later amended such that Player was awarded Eight Thousand Eight Hundred Three Dollars ($8,803.00) in actual damages and Seventy One Thousand Two Hundred Twenty-Five Dollars ($71,225.00) in statutory damages for a total of Eighty Thousand Twenty-Eight Dollars ($80,028.00). The trial court found the jury’s verdict to be a verdict in favor of Stringer Lumber Company, both on the claim filed by Player and the cross-claim filed by the Berrys. The trial court also found the verdict of the jury meant that neither Player nor the Berrys should take anything from Pearl River Forest Products. The Berrys have now perfected their appeal to this Court.
I.
The Berrys argue that the trial court erred in granting Jury Instructions P-1, P-18, and P-21. Instruction P-1 deals with the standard of care necessary for a person attempting to assert a good faith defense to trespass and cutting of timber under Miss.Code Ann. § 95-5-3 (Supp. 1988). It reads as follows:
Due and proper regard for the property of another requires of any person, before he engages in the deliberate act of cutting or destroying a tree, to take whatever precaution and safeguards as are reasonably necessary to assure himself that he has the lawful authority to do so. Failure to take such steps is a lack of, or absence of good faith.
The Court instructs the jury that if you find that the Defendant or Defendants did not take steps, precautions and/or safeguards reasonably necessary to assure that he or they would not unlawfully cut Plaintiff’s timber; then you *899 may assess statutory damages against the Defendant or Defendants.
This instruction by the plaintiff properly states for the jury’s consideration the standard of care that is necessary for a person to claim the benefits of a good faith defense when it is alleged that he cut timber without authority on the property of another. This statement admonishing one to act cautiously and to assure himself of authority is commensurate with the Court’s requirements in Grisham v. Hinton, 490 So.2d 1201 (Miss.1986). Certainly under the facts in this case and under the law as stated by Grisham v. Hinton it represents a fair admonition to the person who undertakes to cut timber.
The statutory penalties mentioned in this instruction are set out in Miss.Code Ann. § 95-5-3 (Supp.1988):
If any person shall cut down, deaden, destroy or take away, if already cut or fallen, any cypress, white oak, black oak or other oak, pine, poplar, black walnut, cherry, pecan, hickory, chestnut, birch, ash, holly, gum, persimmon, cedar, sassafras or beech tree, not his own, without the consent of the owner, he shall pay to the owner of the tree or trees, as a penalty, fifty-five dollars ($55.00) for every such tree so cut down, deadened, destroyed or taken away; and for every other tree not herein described so cut down, deadened, destroyed, or taken away, the sum of thirty-five dollars ($35.00) shall be paid as a penalty. And in addition to the penalty to be paid as herein provided, he shall pay to the owner of such tree or trees the actual value of such tree or trees so cut down, deadened, destroyed or taken away; and for such actual damages and for such penalty the owner may recover in the same suit. To establish the right of the owner prima facie, to recover under the provisions of this section, it shall not be required of the owner to show, by a preponderance of the proof, that the defendant or his agents or employees, acting under the command or consent of their principal, wilfully, recklessly, and knowingly cut such trees, but it shall be only required of the owner to show that such timber belonged to such owner, and that such timber was cut by the defendant, his agents or employees without the consent of the owner, provided, the defendant may establish good faith as an affirmative defense as to the statutory penalty.
The plain language of the statute provides that a prima facie case may be made out by a plaintiff pursuant to conduct by the defendant less than willful, reckless, and knowing behavior. The statute requires that the person offended only show that the “timber belonged to such owner” and that the “timber was cut ... without the consent of the owner” and that the person cutting the trees lacked a good faith effort to establish his own right to cut. The Berrys rely on several cases which state that simple negligence on the part of a defendant will not justify an award of any penalty under § 95-5-3 other than actual damages. Nichols v. Stacks, 485 So.2d 1034, 1037 (Miss.1986); Rutland v. Corley, 287 So.2d 433, 434 (Miss.1973); Dearman v. Partridge, 239 Miss. 611, 619, 124 So.2d 680, 683 (1960).
Recent decisions of this Court have placed the value of those precedents in doubt. This Court relies principally on Grisham v. Hinton, 490 So.2d 1201 (Miss. 1986). In Grisham, the defendant had trees cut on the property of another, despite the findings of two surveyors. The defendant, in her defense, pleaded a good faith belief that the surveyors were wrong and that she knew the true boundary lines in question. 490 So.2d at 1203. As to the requirements of willful, wanton, or reckless behavior seemingly required for liability under § 95-5-3, this Court stated:
Unfortunately, some of our cases have stated that mere carelessness or mistake is not enough to impose the penalty. Such language in and of itself is incomplete. Good faith requires that any person, before cutting trees, will take reasonable steps under the circumstances of the case to determine that he has a lawful authority to do so. The damage which will ensue from a mistake may also merit special care and caution. *900 When one considers that it takes one-half a lifetime to grow pine timber, and longer for hardwood, and the loss attendant to the destruction of such trees, it is too late after the damage to simply say a mistake was made, or in this case, she thought she was the owner. Before such a defense need be entertained there must be a showing that prior to cutting or destruction proper precautionary steps were taken by the defendant under the circumstances to assure himself he had the lawful right to do so.
490 So.2d at 1204r-1205 (citations omitted). The Court then went on to say:
Due and proper regard for the property of another requires of any person, before he engages in the deliberate act of cutting or destroying a tree, to take whatever precaution and safeguards as are reasonably necessary under the facts of that case to assure himself that he has the lawful authority to do so. If he fails to take such necessary steps, he can hardly claim he has acted in good faith. Nor can he fault any fact finder who concludes from such conduct that he has acted with the requisite indifference to be tantamount to willfulness.
490 So.2d at 1205.
Grisham v. Hinton suggests that any supposed owner who has some affirmative notice or knowledge that there is a question concerning ownership of timber must resolve that question in the supposed owner’s favor prior to picking up the ax or cranking up the chain saw. To fail to do so negates the cutter’s good faith.
For any who perceive a conflict between the cases on which the Berrys rely and Grisham, it should be noted that Grisham v. Hinton contains the correct interpretation of behavior required to hold a defendant liable under § 95-5-3, as to what constitutes good faith under the statute. Instruction P-1 follows the language of Gris-ham and is therefore a correct statement of the law. The Berrys’ assignments of error dealing with the other instructions are without merit and especially so since this Court finds that Grisham v. Hinton is the case to be relied upon by this Court.
Instruction P-18 reads as follows:
The court instructs that if you find from a preponderance of the evidence in this case that the Plaintiff, John Player, has sustained actual damages as a proximate result of the negligence of any Defendant herein in the cutting, removal, or sale or the Plaintiff’s timber, then the Plaintiff is entitled to a verdict in an amount which will reasonably compensate him for his loss sustained. Such damages are called compensatory damages or actual damages and are awarded for the purposes of making the Plaintiff whole again insofar as money verdict can accomplish that purpose.
Instruction P-18 dealt only with the possibility of awarding actual damages. There is nothing wrong with using a negligence standard in this instruction. The Berrys’ argument, that the instruction did not mention that such a standard was incorrect for award of statutory damages, provides no rationale for not giving Instruction P-18.
As for Instruction P-21, the Berrys argue that the instruction failed to include the proper definition of good faith. Instruction P-21 provides no definition of good faith. It merely states that good faith, however it is defined, will be defined in an objective, as opposed to a subjective, manner. This Court is in agreement with this proposition. Grisham v. Hinton, 490 So.2d 1201, 1204 (Miss.1986). The Berrys’ assignment of error dealing with these three jury instructions is without merit.
II.
The Berrys argue that the trial court should have heard their counterclaim for adverse possession, or transferred it to the chancery court on a finding of lack of jurisdiction to adjudicate title to real property. John Player argues that the trial court acted correctly, and even if a transfer was in order, such transfer should have been made only on motion of the aggrieved party, the Berrys, and such motion was never made. The trial court dismissed the *901 counterclaim, but allowed an affirmative defense on behalf of the Berrys based on adverse possession.
Player argues first that only the chancery court has jurisdiction to try title to real property. Miss. Const, art. VI, § 160. Player also argues that the obligation to move to transfer was the Berrys’ and it was not reversible error for the trial court to fail to do so on its own. See Dilworth v. Federal Reserve Bank, 170 Miss. 373, 387, 150 So. 821, 824 (1933) (motion to transfer cause to another court must be made in the court below). Other cases seem to suggest that the duty rests equally with the trial court and the aggrieved party. Boyett v. Boyett, 152 Miss. 201, 119 So. 299 (1928); Griffin v. Maryland Casualty Co., 213 Miss. 624, 57 So.2d 486 (1952). We find that in this case the trial court’s failure to transfer the adverse possession claim was not error, considering the lack of motion to transfer on behalf of the Berrys. We do note that the standard of proof required to establish a good faith defense is certainly less than a standard of proof required to establish adverse possession. We note that the counterclaim was not dismissed with prejudice and we do not make any comment as to the merits of the claim should the Berrys decide to pursue it in the future. We find the second assignment of error to be without merit.
III.
Several instructions offered by the Ber-rys seemingly properly state the law, but do not relate legally or factually to the instant case. We find that although these instructions are not incorrect as statements of law that any prejudice arising from their denial was mitigated by other instructions given particularly Instruction D-17 and the decisive nature of the evidence in favor of Player. We find that the trial court’s refusal to give these instructions does not result in reversible error. Hood v. Oakley, 519 So.2d 1236, 1239 (Miss.1988).
The instant case had several parties and many factual questions. The trial court was careful to submit all of the questions to the jury. In a difficult and sometimes confusing situation the jury rendered its verdict within the careful guidance of the trial judge, and this Court after considering the Berrys’ assignments of error finds them meritless and we, therefore, affirm the judgment of the circuit court.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.