734 So.2d 312 (1999)
C.N. THOMAS and Surplus City U.S.A., Inc., Appellants,
v.
HARRAH'S VICKSBURG CORPORATION and W.G. Yates & Sons Construction Company, Appellees.
No. 96-CA-01311-COA.
Court of Appeals of Mississippi.
February 23, 1999.
*313 Mary E. McAlister, Joseph E. Lotterhos, Jackson, Attorneys for Appellants.
M. Patrick McDowell, Jackson, Attorney for Appellees.
EN BANC
PAYNE, J., for the Court:

PROCEDURAL POSTURE AND ISSUES PRESENTED
¶ 1. Appellants, C.N. Thomas and Surplus City, U.S.A. sought damages for common law trespass against appellees, Harrah's Vicksburg Corporation and W.G. Yates and Sons Construction Co. After a trial on the merits, the jury found against Thomas as to both Harrah's and Yates and against Surplus as to Harrah's. The jury found for Surplus with respect to Yates and awarded nominal damages of $3,000. Because of the jury's finding of nominal damages only, the trial judge refused to allow the jury to consider the issue of punitive damages. The trial court overruled Thomas' and Surplus' post-trial motions. Feeling aggrieved, Thomas and Surplus filed this joint appeal.
*314 ¶ 2. The primary issues presented for our review are as follows:
I. WHETHER THE TRIAL COURT ERRED IN DENYING THOMAS' AND SURPLUS' CHALLENGES OF THE SUFFICIENCY OF THE EVIDENCE
II. WHETHER THE JURY'S VERDICT AS TO THOMAS AND SURPLUS WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
III. WHETHER THE TRIAL COURT SHOULD HAVE CONSIDERED THE ISSUE OF PUNITIVE DAMAGES FOR THOMAS AND SURPLUS AGAINST HARRAH'S AND YATES
¶ 3. Upon our careful review of the record and related precedents and after thoughtful consideration of the arguments espoused in the oral arguments of this case, we affirm in part, and reverse, render, and remand in part for further action not inconsistent with this opinion.

FACTS
¶ 4. This litigation stems from the development of Harrah's gambling facility in Vicksburg, Mississippi, beginning over five years ago and acts of trespass admittedly committed by Harrah's and Yates for an approximate six month period beginning in July 1993 and continuing through December 1993. The property in question is a vacant lot adjoining Surplus, which is a closely held corporation wholly owned by Thomas[1]. In 1993, the City of Vicksburg entered into a land sale agreement with Harrah's regarding certain property then owned by the City and other privately owned property that would be acquired by the City[2] and transferred to Harrah's. After unsuccessful purchase negotiations with Thomas, the City instituted eminent domain proceedings against Thomas for the property. Having previously begun construction of its gambling facility, Harrah's continued in this regard during the pendency of the eminent domain litigation[3]. Thomas and Surplus repeatedly asked Harrah's and Yates to refrain from trespassing on the Thomas/Surplus property; however, these requests were ignored by Harrah's and Yates[4]. After realizing that his attempts to protect his property from trespass clearly were futile, Thomas instituted this litigation in Warren County Chancery Court in September 1993, seeking to enjoin Harrah's and Yates from trespassing on the subject property. Upon the chancery court's finding that Thomas had an adequate remedy at law, Thomas moved and was allowed to transfer this action to the Warren County Circuit Court and Surplus was added as a plaintiff. A trial on the merits of the Thomas/Surplus claims for trespass was conducted where Thomas sought damages of $3,074.20 and Surplus sought damages of $30,600. Representatives of Harrah's and Yates' conceded that there was trespass on the Thomas/Surplus property. The jury returned no award for Thomas as to both Harrah's and Yates, and an award of nominal damages in the amount of $3,000 for Surplus against Yates and no award for Surplus against Harrah's. The *315 trial court overruled Thomas' and Surplus' motion for JNOV or, in the alternative for additur or, in the alternative for a new trial. This appeal followed.

ANALYSIS

I. WHETHER THE TRIAL ERRED IN DENYING THOMAS' AND SURPLUS' CHALLENGES OF THE SUFFICIENCY OF THE EVIDENCE
¶ 5. Thomas and Surplus assert that the trial court erred in overruling their multiple challenges to the sufficiency of the evidence in this case. We employ the same standard of review as to all challenges to the sufficiency of the evidence, whether it be a motion for directed verdict, a request for a peremptory instruction, or a motion for JNOV. Henson v. Roberts, 679 So.2d 1041, 1044 (Miss.1996); Upton v. Magnolia Elec. Power Ass'n, 511 So.2d 939, 942 (Miss.1987). The trial judge, in considering a motion for directed verdict, must weigh the evidence in the light most favorable to the non-moving party. Turnbough v. Steere Broadcasting Corp., 681 So.2d 1325, 1326 (Miss.1996); Fulton v. Robinson Industries, Inc., 664 So.2d 170, 172 (Miss.1995); Turner v. Wilson, 620 So.2d 545, 550-51 (Miss.1993). A motion for a directed verdict, operationally, takes the case from the jury. Therefore, such a motion is proper only if the non-moving party's evidence is so lacking that a reasonable and fair-minded jury would be unable to return a verdict in favor of the non-moving party. Tate v. Southern Jitney Jungle, 650 So.2d 1347, 1349-50 (Miss. 1995); Turner v. Wilson, 620 So.2d 545, 550-51 (Miss.1993). In the case at bar, Thomas and Surplus moved for a directed verdict at the close of the appellees' case on the issue of trespass, and the motion was denied by the trial court.
¶ 6. Thomas and Surplus contend that the intent of the common law trespasser is irrelevant. They cite Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 644, 80 So.2d 785, 791 (1955) as support for their contention. Kelley was a premises liability case and defined "trespasser" as "a person who enters the premises of another without license, invitation, or other right, and intrudes for some definite purpose of his own, or at his convenience, or merely as an idler with no apparent purpose, other than, perhaps, to satisfy his curiosity." Id. at 791. Harrah's and Yates present Berry v. Player, 542 So.2d 895 (Miss.1989) in support of their position that negligence is the proper standard to apply. Berry dealt with a jury instruction under Miss.Code Ann. § 95-5-3[5] concerning recoverable damages for cutting timber from private property. In that case the Mississippi Supreme Court found a negligence instruction proper. Id. at 900. Further, Harrah's and Yates urge that we should follow the rationale of Comet Delta, Inc. v. Pate Stevedore Co., 521 So.2d 857 (Miss.1988) and Leaf River Forest Products, Inc. v. Ferguson, 662 So.2d 648 (Miss.1995), where the Restatement (Second) of Torts § 822 negligence standard for nuisance was adopted with regard to trespass.
¶ 7. We think it instructive to briefly look at the historical basis for the trespass to land action. Professors Prosser and Keeton note that "[h]istorically, the requirements for trespass to land under the common law action of trespass were an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was the direct result of some act committed by the defendant." W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS, § 13 at 67 (5th ed.1984). Further, the tort of trespass to land can be committed by other than simply entering on the land; trespass occurs by placing objects on the property, by causing a third party to go onto the property, or by remaining on property after the expiration of a right of entry. KEETON § 13 at 72-73.
*316 ¶ 8. With regard to the requisite intent for trespass to land, the Restatement (Second) of Torts § 163 comment (b) addresses this issue:
b. Intention. If the actor intends to be upon the particular piece of land, it is not necessary that he intend to invade the other's interest in the exclusive possession of his land. The intention which is required to make the actor liable under the rule stated in this Section is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. It is, therefore, immaterial whether or not he honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter. [emphasis added].
Thus, as Professors Prosser and Keeton point out, "the intent required as a basis for liability as a trespasser is simply an intent to be at the place on the land where the trespass occurred." KEETON § 13 at 73.
¶ 9. With this historical basis, we now turn to the merits of the parties' arguments. Clearly, there is no negligence required for liability for trespass, and we therefore reject Harrah's and Yates' invitation to apply a negligence standard to ordinary trespass. The negligence instruction in Berry, referenced in the appellees' brief, dealt with what is often referred to as the tree-cutting trespass, not the common law action subject of this litigation. Furthermore, not only has the statute in Berry been repealed, albeit replaced with a similar statute, the Mississippi Supreme Court did not definitively declare that negligence was the proper standard, but said only in abbreviated form that in that case, the negligence instruction was not improper. Berry, 542 So.2d at 900.
¶ 10. The Thomas and Surplus position is correct in asserting that negligence is not necessary for common law trespass liability. Furthermore, while there is an intent requirement, it is very broad in definition as demonstrated in the Restatement (Second) § 163 above. Common law trespass is an intrusion upon the land of another without a license or other right for one's own purpose. Saucier v. Biloxi Regional Med. Ctr., 708 So.2d 1351, 1357 (Miss.1998);Skelton v. Twin County Rural Elec. Ass'n, 611 So.2d 931, 936 (Miss.1992); Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008, 1011 (Miss.1978); Marlon Inv. Co. v. Conner, 246 Miss. 343, 349, 149 So.2d 312 (1963); Kelley v. Sportsmen's Speedway, Inc., 224 Miss. 632, 643, 80 So.2d 785, 790 (1955). The testimony establishes that is exactly the case here.
¶ 11. Two key witnesses, Charles Wells, Harrah's construction manager for this project, and Jim Smith, the construction superintendent for Yates, admitted that there were trespasses that occurred on Thomas' property. First, Wells testified that he worked on the project from July 1993 until July 1994, and that he understood that there was a continuing dispute with Thomas over the property lines. Further, Wells admitted that he, as well as Yates, were involved in the decision to move the north wall because it encroached on Thomas' property. The plans for the facility, according to Wells, called for the building to extend "right up to the property line...." Questioning by appellants' counsel also established that the trespass was inevitable:
By Mr. Lotterhos [counsel for appellants]: Now, as a practical matter, if you were going to construct that [building] absolutely on the property line, it would have been necessary to get on the adjacent property to work on the exterior. Isn't that true?
By Mr. Wells: On that ten foot face, yes, sir.
By Mr. Lotterhos: Alright and that happened, didn't it?

*317 By Mr. Wells: Yes, sir.
Wells later testified that Harrah's Vice-President of Design and Construction, Pat Monson, approved of moving the encroaching wall. Second, Jim Smith, the construction superintendent for Yates on Harrah's Vicksburg project, testified for the appellees. On direct examination, Smith took great pains to detail how careful Yates was in constructing special scaffolding to avoid trespassing on the Thomas/Surplus property and emphasized the fact that he had personally fired three employees of Yates for trespassing. Additionally, Smith, in a strained and futile effort, attempted to disassociate Yates from the various subcontractors employed by Yates, while admitting that Yates had control over the subcontractors. Yet, on cross-examination, Smith admitted that scaffolding erected by Yates in conjunction with the construction of the facility was indeed on the Thomas/Surplus property and that they received permission from Thomas to enter the property for the specific purpose of removing the scaffolding to halt the trespass. Further, Smith admitted to repeated airspace violations on the Thomas/Surplus property with the boom swinging over the property. As did Wells, Smith also admitted that the trespass on the Thomas/Surplus property was unavoidable after the construction reached a certain point and when the wall was ultimately moved:
By Mr. Lotterhos: And you were aware that ... it was to bea portion of that north wall was to be right on the Thomas property line, isn't that true?
By Mr. Smith: Yes, sir.
. . .
By Mr. Lotterhos: Now, you have been involved in construction a lot of years, haven't you?
By Mr. Smith: Yes, sir.
. . .
By Mr. Lotterhos: ... based on your experience, when you build right upon the line or wall, it is necessary to get on the outside of the wall to work on it, isn't that true?
By Mr. Smith: Yes, sir, it is.
. . .
By Mr. Lotterhos: In order to break out that wall, you had to get on Mr. Thomas' property, didn't you?
By Mr. Smith: Yes, sir, we did.
This uncontroverted testimony established that there were trespasses on the Thomas/Surplus property.
¶ 12. Having established the fact that trespasses occurred in this case, we now look to the issue of principal liability for the actions of an independent contractor. The Mississippi Supreme Court has addressed the issue of principal liability for tortious acts of independent contractors:
Where, however, the work or service to be performed in itself entails the commission of some illegal, dangerous or tortious act, the rule obviously cannot apply, because in such instance the principal and the independent contractor both play an integral part, are both proximate causes, of whatever harm ensues. Citing National Rating Bureau, Inc. v. Florida Power Corp., 94 So.2d 809 (Fla.1956); Peairs v. Florida Publishing Co., 132 So.2d 561 (Fla.App. 1961); Morgan v. Big Woods Lumber Co., 198 Ky. 88, 249 S.W. 329 (1923); Sun Sand Co. v. County Court of Fayette County, 96 W.Va. 213, 122 S.E. 536 (1924).
Hester v. Bandy, 627 So.2d 833, 841-42 (Miss.1993).
¶ 13. In this case, the testimony of Charles Wells and Jim Smith established that the construction of the Harrah's facility was on a fast-tract, and it was known that the north wall of the shore-side facility would be very close to the Thomas/Surplus property line and that trespass was unavoidable in the construction process. Appellees go to great lengths to describe the precautions made by the construction personnel to avoid the trespasses. But this is quite simply irrelevant. A picture, or in this case, pictures, are worth thousands *318 of words. It was obvious that deliveries were made, building supplies were stacked, and scaffolding was erected for construction purposes on the Thomas/Surplus property. As indicated by the photographs and the testimony of Wells, the trespass on the Thomas/Surplus property was inevitable. Undoubtedly, trespass occurred at the hands of Harrah's and Yates during the course of completing this project. While some of the photographs were unable to be directly tied to the appellees, a quantum more proved that the trespasses complained of occurred on the subject property for which Harrah's was responsible. Appellees' arguments to the contrary are spurious and not well-taken.
¶ 14. Harrah's designing of the facility which required acts of trespass on the subject property in the accomplishment of the design is a proximate cause of the trespass, and not simply derivative in nature. It is clear, under Hester, that Harrah's is responsible for the tortious acts of trespass of Yates and its subcontractors committed on the property in question during the course of this construction project. However, as set forth in our discussion of Issue III below, the evidence was sufficient only to support a directed verdict for the intentional tort of trespass in favor of Surplus against Harrah's and Yates, and not in favor of Thomas. Therefore, the trial court should have directed a verdict for Surplus on the issue of the intentional tort of trespass against both appellees. The only issue the jury should have had to determine with regard to the trespass against Surplus was the amount of damages. Thus, we affirm as to the issue of trespass against Thomas, reverse and render on the issue of trespass as to Surplus and remand for further proceedings on the issue of damages suffered by Surplus.

II. WHETHER THE JURY'S VERDICT AS TO THOMAS AND SURPLUS WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 15. Thomas and Surplus submit that the verdict in this case was against the overwhelming evidence presented at trial. Our scope of review is limited in considering challenges to the weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence presented as supportive of the verdict, and we will disturb a jury verdict only when convinced that the circuit court has abused its discretion in failing to grant a new trial or if the final result will result in an unconscionable injustice. Herrington v. Spell, 692 So.2d 93, 103 (Miss.1997). A jury verdict in a civil case will not be disturbed on appeal unless the verdict was against the overwhelming weight of the evidence and credible testimony or if the jury has been confused by faulty instructions by the trial court, or if the jury's verdict is a result of bias, passion, and prejudice. Southwest Miss. Regional Med. Ctr. v. Lawrence, et al., 684 So.2d 1257, 1267 (Miss.1996); Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n, 560 So.2d 129, 132 (Miss.1989); Clayton v. Thompson, 475 So.2d 439, 443 (Miss.1985); Griffin v. Fletcher, 362 So.2d 594, 596 (Miss.1978). Additionally, because the jury's verdict in this case favored Harrah's and Yates, all evidentiary conflicts are resolved in their favor in our review, all reasonable inferences which flow from the testimony are viewed in their favor, and we must assume that the jury drew every permissible inference from the evidence offered in favor of Harrah's and Yates. Burnham v. Tabb, 508 So.2d 1072, 1077 (Miss.1987); City of Jackson v. Locklar, 431 So.2d 475, 477 (Miss.1983).
¶ 16. The jury system is the bedrock of our legal system, and we rarely tamper with a jury's work; however, there are times when a trial jury simply misses the point or for whatever reason demonstrates a bias or prejudice in their verdict. It is in these cases where we must step in and correct clear wrongs. The present case represents an occasion where we must *319 overrule the jury's assessment of nominal damages because an unconscionable injustice will result otherwise.

Thomas's Damages
¶ 17. First, Thomas was entitled to no damages in this case. While Harrah's and Yates and their subcontractors trespassed on Thomas' property, he was a lessor out of possession. As Professors Prosser and Keeton make clear:
... an owner who is out of possession cannot maintain trespass. Thus, a landlord cannot sue for a mere trespass to land in the occupation of his tenant. He is not without legal remedy, in the form of an action on the case for the injury to the reversion; but, in order to maintain it, he must show more than the trespassnamely, actual permanent harm to the property of such sort as to affect the value of his interest.
W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS, § 13 at 78 (5th ed.1984). The Mississippi Supreme Court has addressed the issue of an out-of-possession property owner's right to damages: "the landlord's rights, after the tenant's entry, are confined to protection of his reversionary interest merely-that is to maintenance of actions for such injuries as would, in the ordinary course of things, continue to affect such interest after the [term expires]..." Greenville, City Council of, v. White, 194 Miss. 145, 11 So.2d 816, 819 (1943) (quoting 32 AM.JUR. § 78). The trial jury's verdict with regard to Thomas was consistent with the evidence in this case. Further, Thomas sought damages of $3,070.24 itemized as follows: $2,590 in surveying expenses, $230.24 in photography expenses related to documenting the trespassing of the appellees, and $250 in expenses for erecting fences to protect his property. The Mississippi Supreme Court has held, in a similar situation where an aggrieved landowner sought surveying fees from the trespasser, that such fees are not recoverable as damages. City of Laurel v. Bush, 238 Miss. 718, 728, 120 So.2d 149, 154 (1960). In addition, the proper award of damages for common law trespass is the reasonable rental value of the property. CHARLES T. MCCORMICK, HANDBOOK ON THE LAW OF DAMAGES § 126 (1935). Thus, the alleged damages for photography expense and fencing would not have been recoverable even if Thomas had been entitled to trespass damages. Accordingly, we affirm as to the jury's verdict in favor of Harrah's and Yates as to Thomas.

Surplus' Damages
¶ 18. Second, we consider the jury's award to Surplus against Yates of $3,000 in nominal damages, and reverse and remand. Our reading of Mississippi precedent, an award of $3,000 simply cannot be classified as "nominal damages". Mississippi precedent views nominal damages as being small or trivial in nature, awarded for a technical injury due to a violation of some legal right, a consequence of which requires an award of some damage to determine that right. Wells v. Branscome, 222 Miss. 1, 5, 74 So.2d 743, 745 (1954) ($.01 award for nominal damages); Southland Co. v. Aaron, 224 Miss. 780, 786, 80 So.2d 823, 826 (1955) (proof exceeded award of nominal damages); City of Laurel v. Bush, 238 Miss. 718, 729, 120 So.2d 149, 155 (1960) ($50 award for nominal damages). Actual damages, otherwise termed compensatory damages, refers to substantial damages suffered as opposed to nominal harm. Southland, 80 So.2d at 826.
¶ 19. In resolving all evidentiary conflicts and reasonable inferences in favor of Harrah's and Yates, it remains apparent that the jury's verdict was not based on the overwhelming weight of the evidence and that actual damages for Surplus were warranted. The evidence in this case clearly demonstrated that Surplus suffered more than mere nominal harm, as the jury found, as a result of Harrah's and Yates intentional and continuous acts of trespass on the business property.
¶ 20. Ed Mays, vice-president of Surplus since 1973 and an accountant, testified extensively *320 regarding the business losses suffered by Surplus as a result of the admitted trespass by Harrah's and Yates as we set forth in Part I of the opinion. Mays, relying on financial statements prepared for Surplus by their independent accounting firm, testified that for the period of the admitted trespass Surplus suffered business losses of $30,600. Mays arrived at this figure by comparing Surplus's total sales for the months of July-December[6] of the years 1992-1994. In comparing Surplus's sales from July-December of 1993 to its sales in the same period of 1992, sales dropped by $30,600. In a similar comparison for the same period in 1994, sales were off by $33,600. Harrah's and Yates argue that the eminent domain proceedings related to this litigation had an adverse impact on Surplus' sales. However, even if true, this litigation ceased in September and the construction of the Harrah's facility continued until December or early January. Thus, there are at least three months that the construction project and the related trespasses likely had an adverse impact on Surplus's sales. Harrah's and Yates contend that new market competition in the sporting goods industry in Vicksburg could have impacted the sales; however, other than this conclusion, no supporting evidence to this effect was proffered. Additionally, Harrah's and Yates suggest that Surplus' manager, John Daniel, contributed to the decreased sales in that he neglected the business while gathering evidence of the trespasses on the property. Even if this argument is true, it weighs against Harrah's and Yates because but for their acts of trespass, Daniels' collection of evidence of the trespass would not have been necessary.
¶ 21. As already noted, testimony at trial by Harrah's and Yates' own witness, Jim Smith, the construction superintendent, established that this project was on a fast tract. Construction proceeded around the clock in twelve hour shiftstwenty-four hours per day. Photographs introduced at trial clearly showed that Yates' employees and equipment and their numerous subcontractors trespassed on the Surplus property. Other photographs demonstrated that Yates' equipment blocked access in several instances to Surplus' property as well as invaded the airspace over the property with the boom of the crane.
¶ 22. Based on the overwhelming weight of the evidence presented at trial, Surplus suffered significant commercial harm by the trespassory construction activities in this case. Although the jury found otherwise, public policy will simply not allow corporations, such as Harrah's and Yates, to run roughshod over already established entities in the name of rapid construction and commercial advancement. Surplus suffered actual, compensable damages as a result of this construction and not merely a technical injury. While it is unclear as to why the jury only saw fit to award Surplus $3,000, we cannot say that the amount of the award evidenced a bias, passion, or prejudice given Mays' admission that part of Surplus' losses were attributable to the eminent domain publicity of this same property. However, it is clear that the damage suffered by Surplus was more than nominal in character. Further, it is equally clear that both Harrah's and Yates are responsible for this harm. Therefore, we reverse and remand this award with instructions to the trial court to enter a $3,000 judgment of actual damages for Surplus against both Harrah's and Yates, jointly and severally.

III. WHETHER THE TRIAL COURT SHOULD HAVE CONSIDERED THE ISSUE OF PUNITIVE DAMAGES FOR THOMAS AND SURPLUS AGAINST HARRAH'S AND YATES
¶ 23. As set forth above, we affirm the trial court with regard to damages to Thomas, and the issue of punitive damages as to Thomas is moot. However, *321 the uncontroverted evidence at trial having established that Surplus suffered actual damages flowing from Harrah's and Yates' trespassory actions, we must now look to matter of possible punitive damages with regard to Surplus. An award of punitive damages in a case such as this is controlled by § 11-1-65 of the Miss.Code Ann. (Supp.1998), the relevant potion of which follows:
(1) In any action in which punitive damages are sought:
(a) Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.
(b) In any action in which the claimant seeks an award of punitive damages, the trier of fact shall first determine whether compensatory damages are to be awarded and in what amount, before addressing any issues related to punitive damages.
(c) If, but only if, an award of compensatory damages has been made against a party, the court shall promptly commence an evidentiary hearing before the same trier of fact to determine whether punitive damages may be considered.
(d) The court shall determine whether the issue of punitive damages may be submitted to the trier of fact; and, if so, the trier of fact shall determine whether to award punitive damages and in what amount.
(e) In all cases involving an award of punitive damages, the fact finder, in determining the amount of punitive damages, shall consider, to the extent relevant, the following: the defendant's financial condition and net worth; the nature and reprehensibility of the defendant's wrongdoing, for example, the impact of the defendant's conduct on the plaintiff, or the relationship of the defendant to the plaintiff; the defendant's awareness of the amount of harm being caused and the defendant's motivation in causing such harm; the duration of the defendant's misconduct and whether the defendant attempted to conceal such misconduct; and any other circumstances shown by the evidence that bear on determining a proper amount of punitive damages. The trier of fact shall be instructed that the primary purpose of punitive damages is to punish the wrongdoer and deter similar misconduct in the future by the defendant and others while the purpose of compensatory damages is to make the plaintiff whole.
(f)(i) Before entering judgment for an award of punitive damages the trial court shall ascertain that the award is reasonable in its amount and rationally related to the purpose to punish what occurred giving rise to the award and to deter its repetition by the defendant and others.
(ii) In determining whether the award is excessive, the court shall take into consideration the following factors: 1. Whether there is a reasonable relationship between the punitive damage award and the harm likely to result from the defendant's conduct as well as the harm that actually occurred; 2. The degree of reprehensibility of the defendant's conduct, the duration of that conduct, the defendant's awareness, any concealment, and the existence and frequency of similar past conduct; 3. The financial condition and net worth of the defendant; and 4. In mitigation, the imposition of criminal sanctions on the defendant for its conduct and the existence of other civil awards against the defendant for the same conduct.
Punitive damages are only appropriate in the most egregious cases so as to discourage *322 similar conduct in the future and should only be awarded in cases where the actions are extreme. Wirtz v. Switzer, 586 So.2d 775, 783 (Miss.1991)(citing Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss.1987)). Further, the trial court's duty in determining whether the issue of punitive damages should be submitted to the jury is, likewise, very clear. The jury should be allowed to consider the issue of punitive damages if the trial judge determines, under the totality of the circumstances and in light of a defendant's aggregate conduct, that a reasonable, hypothetical juror could have identified "either malice or gross neglect/reckless disregard" to the rights of others. Wirtz, 586 So.2d at 783 (citing Colonial Mortgage Co., Inc. v. Lee, 525 So.2d 804, 808 (Miss. 1988)).
¶ 24. On remand of this matter, the trial court shall conduct a hearing on the sole issue of whether the issue of punitive damages should be submitted to a jury for Surplus against Harrah's and Yates, utilizing the well-settled standards set forth above.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED ON THE ISSUE OF TRESPASS AS TO THOMAS BY HARRAH'S; AFFIRMED ON THE ISSUE OF TRESPASS AS TO THOMAS BY YATES; REVERSED AND RENDERED ON THE ISSUE OF TRESPASS AS TO SURPLUS BY HARRAH'S; REVERSED AND RENDERED ON THE ISSUE OF TRESPASS AS TO SURPLUS BY YATES; REVERSED AND REMANDED FOR A DETERMINATION OF WHETHER PUNITIVE DAMAGES ARE APPROPRIATE FOR SURPLUS AGAINST HARRAH'S; AND REVERSED AND REMANDED FOR A DETERMINATION OF WHETHER PUNITIVE DAMAGES ARE APPROPRIATE FOR SURPLUS AGAINST YATES. ALL COSTS OF THIS APPEAL ARE TAXED ONE-HALF AGAINST THOMAS, ONE-FOURTH AGAINST HARRAH'S, AND ONE-FOURTH AGAINST YATES.
THOMAS, P.J., DIAZ, IRVING, KING, AND LEE, JJ., CONCUR.
McMILLIN, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, C.J., COLEMAN AND SOUTHWICK, JJ.
McMILLIN, P.J., CONCURRING IN PART AND DISSENTING IN PART:
¶ 26. I concur in the majority's decision to extend the $3,000 judgment against Yates to become the joint and several obligation of both Yates and Harrah's. However, I respectfully dissent from the majority's decision to remand for a new trial solely on the issue of punitive damages against both Yates and Harrah's. There is no legal basis upon which to take this step.
¶ 27. It has never been the law that a party is entitled to have the jury consider the imposition of punitive damages simply because plaintiffs counsel has pled a case for such damages in the complaint. To the contrary, the trial court has always stood as a check against the unwarranted assessment of punitive damages by virtue of the court's duty, after hearing the evidence, to decide whether the proof created a legitimate issue as to whether the defendant's conduct was so wilful, wanton, reckless or malicious that such damages might be in order. Wirtz v. Switzer, 586 So.2d 775, 783 (Miss.1991).
¶ 28. The Mississippi Legislature, in adopting a statute governing the adjudication of punitive damage claims, did nothing to change this role of the trial court. In passing Section 11-1-65, the Legislature specifically provided that "[t]he court shall determine whether the issue of punitive damages may be submitted to the trier of fact...." Miss.Code Ann. § 11-1-65(1)(d) (Supp.1998).
*323 ¶ 29. The trial court in this case, after hearing all of the evidence, ruled unequivocally that "the issue of punitive damages should not be sent to the jury...." The trial court is vested with substantial discretion in determining whether the proof warrants jury consideration of punitive damages. McDonald v. Moore, 159 Miss. 326, 131 So. 824, 825 (1931). This Court, sitting as an appellate court, is obligated to give deference to the trial court's decision, and we may reverse only if we conclude that the trial court abused its discretion. Id.
¶ 30. The majority, in reversing for further proceedings solely on punitive damages, fails to make the requisite finding that the trial court abused its discretion when it declined to submit the punitive damages question to the jury. Neither does the majority, in its analysis, point to evidence in the record to support a finding that there existed a justiciable issue as to whether Surplus City had shown "by clear and convincing evidence that the defendant[s]... acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a) (Supp.1998). In its discussion on the point, the majority merely quotes the punitive damages statute in its entirety and then cites a number of cases that do nothing more than illustrate the difficult hurdles that lie before a plaintiff seeking to impose punitive damages. In the absence of a specific finding that the trial court abused its discretion, this Court has no authority to remand for further proceedings on an issue that has already been finally adjudicated.
¶ 31. In the opening paragraph of its opinion, the majority notes that the jury's verdict, returned in the amount of $3,000, stated that it was for "nominal damages." The majority goes on to say that "[b]ecause of the jury's finding of nominal damages only, the trial judge refused to allow the jury to consider the issue of punitive damages." (emphasis supplied). I respectfully disagree with that statement and would suggest that there is no support in the record for the proposition that the form of the jury's verdict was the reason that the trial court decided against submitting the issue of punitive damages to the jury. My review of the record convinces me of two things:
¶ 32. (a) The jury's verdict was not actually one for "nominal damages" as that term is understood in the law, but was one for actual damages in a relatively modest sum. There is simply no way to square the term "nominal damages" with an assessment of damages in the amount of $3,000. It seems evident that the jury's unfortunate use of the term "nominal" was intended to convey the notion that the damages proved by the plaintiff were not substantial. I would, therefore, find that the figure of $3,000 trumps the word "nominal" in the jury's verdict, and I would disregard the word "nominal" as surplusage.
¶ 33. (b) The trial court did not treat the verdict as one for nominal damages only. Rather, the trial court clearly considered the verdict to be one for actual damages. During the hearing on plaintiffs post-trial motions, the court speculated as to what particular elements of the plaintiff's proof on damages might be reflected in a verdict of that amount. The court pondered whether the $3,000 might relate to evidence that the trespass interfered in a minor way with Surplus City's "overflow" parking, or, alternatively, that it might be based on Thomas's testimony regarding out-of-pocket expenses related to dealing with the trespass. If the trial court were, in fact, viewing the verdict as one for nominal damages only, such discussion would be nonsensical since nominal damages are simply that"... a trifling sum awarded to a plaintiff in an action, where there is no substantial loss or injury to be compensated, but still the law recognizes a technical invasion of his rights or a breach of the defendant's duty...." BLACK'S LAW DICTIONARY 392 (6th ed.1990). It is evident *324 to me that the trial court considered the jury's award of $3,000 as an award of actual damages and that the court's decision not to submit the punitive damage claim to the jury was based, not on the use of the word "nominal" by the jury, but on the court's conclusion that the proof simply did not show the existence of a legitimate jury issue on punitive damages.
¶ 34. That decision, based on the record now before this Court, does not indicate an abuse of the discretion given to the trial court to decide such matters. It is, therefore, beyond this Court's authority to disturb that decision. The judgment of the trial court on the issue of punitive damages ought to be affirmed.
BRIDGES, C.J., COLEMAN AND SOUTHWICK, JJ., JOIN THIS SEPARATE OPINION.
NOTES
[1] The property subject of this litigation was owned by Thomas but leased to Surplus for business purposes.
[2] The privately owned property was to be obtained either by direct purchase or by eminent domain proceedings. All funds for these acquisitions were to be provided by Harrah's.
[3] The eminent domain action was ultimately decided in favor of Thomas. See Mayor and Aldermen of the City of Vicksburg v. Thomas, 645 So.2d 940 (Miss.1994).
[4] At one point, John Daniels, manager of Surplus City, in good faith and in the spirit of being a good commercial neighbor, gave certain persons related to the construction permission to cross the property. Appellants did not claim damage in this regard. The only damages sought in this litigation were for trespass occurring after the appellants unequivocally put Harrah's and Yates on notice that they could no longer enter the property.
[5] Miss.Code Ann. § 95-5-3 had been repealed by the Mississippi Legislature and replaced with § 95-5-10, which also concerns trespass with regard to cutting of trees.
[6] The acts of trespass in this case occurred between July 1993 and December 1993.