EMERY, Administrator, etc., Respondent, vs. FUGINA and others, Appellants.

*March 5 — March 22, 1887.*

*Landlord and tenant: Growing crops.*

If there was no reservation in the lease, the lessee of a farm is entitled to a crop of wheat growing upon it at the time of executing the lease, and which matured during the term.

APPEAL from the Circuit Court for *Trempealeau* County.

This is an action of trover to recover the value of 150 bushels of winter wheat, of the alleged value of $150. The taking and conversion of the wheat by the defendants, and the value thereof, is not controverted. Each party claims to own the wheat, and this is the only controversy in the case.

The wheat was raised on the farm of one Paul Pampauch, and was harvested in July, 1881. On April 19 of that year, Pampauch, who was indebted to the plaintiff's intestate, executed to her an instrument in writing of that date, purporting to be a lease of such farm for eight months from the date of such instrument, at the rent of $125, the receipt whereof was therein acknowledged by the lessor. The instrument is in the usual form of a lease, and contains no reservation by the lessor of any right or interest in the leased premises, or the crop growing thereon, during such term. The plaintiff claims the wheat in controversy under this lease to his intestate of the land upon which it was growing when the lease was executed.

On July 25, 1881, Pampauch executed a chattel mortgage to the defendants on the same wheat, to secure his indebtedness to them, and such mortgage was duly filed in the proper town clerk's office on the same day. The wheat had been cut, and was standing in the shock, when the mortgage was executed and filed. The defendants claim the property under this mortgage, and are entitled to hold it unless the plaintiff's intestate obtained a paramount title thereto under the aforesaid instrument of April 19th. The defendants introduced testimony on the trial tending to prove that the farm and wheat remained in the possession of Pampauch during the term of the lease or instrument of April 19th, and that such instrument, although in form a lease, was in fact merely a security for money, and claimed that because it was not filed as a chattel mortgage it was void as against them.

The court submitted but a single question to the jury, which is as follows: "Was the instrument under which the plaintiff claims title to the winter wheat described in the complaint, intended as a lease or as a security for the debt of Paul Pampauch?" The jury answered, "It is a lease." Each party moved for judgment on the verdict. The motion of the defendants was overruled, as was also their motion, made subsequently, for a new trial. The motion of the plaintiff was granted, and judgment for the value of the wheat entered in his favor. The defendants appeal from the judgment.

*E. C. Higbee,* for the appellant.

For the respondent the cause was submitted on the brief of *Sam. S. Miller.* To the point that the title to the crop passed under the lease, he cited *Wintermute v. Light,* 46 Barb. 278; *Hadley v. Barton,* 47 How. Pr. 481; *McLean v. Bovee,* 24 Wis. 295.

LYON, J. In many respects this case is similar to that of *Lamson v. Moffat,* 61 Wis. 153, on the authority of which, doubtless, the question of the intention of the parties in executing the instrument of April 19, 1881, was submitted to the jury. The evidence is sufficient to support the special finding that such instrument, under which the plaintiff claims title to the wheat, is what on its face it purports to be, a lease, and hence not a mere security for a debt. Being a lease, there can be no doubt, we think, that the crop of wheat growing upon the leased premises when the instrument was executed, and which matured during the term of the lease, became the property of the lessee,— the same not having been reserved by the lessor. This must necessarily result from the rules of law that the tenant is vested with all the rights incident to possession, and the use and enjoyment of all the privileges appurtenant to the leased premises, and may maintain an action against any person who

disturbs his possession or trespasses upon the premises, even though it be the landlord. The latter has no right to enter, during the term, to repair or to remove crops, unless he has stipulated with the lessee for such right. See Tayl. Landl. & Ten. § 178; *Hisey v. Troutman,* 84 Ind. 115. Had the question related to the crop of grass growing upon the premises when the lease was executed, no one would contend that it did not pass by the lease to the lessee, who might lawfully pasture his cattle upon it or harvest it for his own use. The fact that the crop is wheat instead of grass cannot change the rule.

The case was tried throughout by both parties on the theory that if the instrument of April 19th was a lease, the plaintiff must recover. The plaintiff having succeeded in establishing it a lease, if that theory be adhered to the judgment should not be disturbed. Yet a point has been raised and argued in this court by counsel for defendants outside this theory, which will now be noticed.

The plaintiff, on his direct examination, testified that, as agent of his intestate in her life-time and at the time the lease was executed, he employed Pampauch to put in the crops on the leased premises. On his cross-examination he further testified that the agreement was that if Pampauch did the work faithfully he was to receive one fourth of the crops for his services. On redirect examination he stated that Pampauch was to receive one fourth *the value* of the crops for such services. On this testimony counsel maintains that Pampauch was tenant in common of the crop with plaintiff's intestate, owning an undivided one fourth thereof, and hence, if the plaintiff can recover in the action, the recovery should be limited to the value of three fourths of the wheat in controversy.

It is very doubtful, to say the least, whether the wheat then growing on the farm was included in this contract, conceding it to be as stated in such cross-examination. That con-

Emery, Adm'r, etc. vs. Fugina and others.

tract seems to be limited to crops put in after the execution of the lease. But, however that may be, the fair interpretation of the whole testimony is that the terms of the contract were as stated and explained by the plaintiff on his redirect examination, which negatives the claim that Pampauch retained any interest in the wheat in controversy. Pampauch was a witness in the case, his deposition having been read on the trial in behalf of the defendants. He denied that the plaintiff's intestate had any interest in the winter wheat under her lease, and testified that after she was paid the balance of the proceeds of the farm was to belong to him. His testimony was most favorable to the defendants, and was submitted to the jury on the question of the character of the instrument of April 19th. No point seems to have been made on the trial to the effect that, even if such instrument was a lease, still Pampauch had an interest in the wheat in controversy. No instructions or questions were proposed with reference to any such view; but, on the contrary, the court and both parties acted throughout upon the hypothesis that if the jury should determine the instrument to be a lease the plaintiff should recover for all of the wheat taken and converted by the defendants. We are satisfied that such hypothesis is fully sustained by the proofs. Were its accuracy more doubtful than it is, or even were it inaccurate, we should hesitate, under the circumstances above stated, to disturb the judgment for that reason.

*By the Court.* — The judgment of the circuit court is affirmed.