## S. A. AGNEW ET AL. *v.* A. G. JONES.

1. LAND. *License.*

A verbal agreement by the owner to convey land to a county for school purposes, by which third parties are induced to erect a schoolhouse thereon, is an irrevocable license for the purpose for which it was made, as long as the house is used for the purpose specified.

2. SAME. *In whose favor license good. Trespass.*

A license to use land is good only to those in whose favor and for whose use it is given. Every entry upon the land of another without lawful authority is a trespass, whether the land be inclosed or not, and whether appreciable damage be done or not.

3. SAME. *Entry to take one's own personalty.*

It is a trespass to enter the land of another, without his consent, to take one's own personal property.

FROM the circuit court, first district, of Hinds county.

HON. ROBERT POWELL, Judge.

Plaintiffs sued defendant before a justice of the peace, claiming that they were the owners of a house which defendant had torn down and converted the material thereof to his own use. A jury trial was had in the justice's court, resulting in a verdict of one cent against defendant. Plaintiffs appealed to the cir-

cuit court, where a trial *de novo* was had, and, upon which, the facts were shown to be these:

Certain residents of Forest Hill School District concluded, for their convenience, to erect a schoolhouse at a point near the southern boundary of the district. There was already a schoolhouse belonging to the district, but it was located in the northern part thereof. These residents selected an acre of land belonging to the ancestor of the plaintiffs, who was one of their number, upon which to erect the new house, and plaintiffs' ancestor, consenting thereto, agreed verbally to execute a deed, conveying the land to the county for school purposes, but it was understood that the deed should provide that religious worship might be held on the premises, and if the use of the land for school purposes was abandoned, the title thereto should revert to the grantor, or his heirs; but it was a controversy, on the trial, whether the agreement was that the proposed deed should provide that the house itself was never to be the property of the grantor. The house sued for was built upon the land, under the verbal agreement, partly with money obtained for the purpose from the county, and partly by voluntary contributions from the parties interested. This was done in the lifetime of plaintiffs' ancestor. A school was maintained in the house for a year or two, and then, after the death of plaintiffs' ancestor, the patrons, or a large majority of them, of Forest Hill School District—one of the plaintiffs, as was claimed by defendant, participating—agreed to dispose of both schoolhouses, and with the proceeds erect a new one near the center of the district; the school board of the county having so located the school of the district. The house in controversy was sold accordingly by a committee of the patrons of the school district, and the purchaser from them conveyed the same to the defendant. The members of the committee who made the sale were not of those who built the house. Plaintiffs' ancestor died intestate without ever having executed a deed to the premises, and several of the plaintiffs are infants. Defendant tore down

the house, the value of which was proved, and converted the material to his own use.    The trial in the circuit court resulted in a verdict and judgment for defendant.    Plaintiffs appealed to the supreme court.

*Lowry & Jayne*, for appellants.

The well-settled principle of law is that a building permanently fixed on the freehold becomes a part of it; that *prima facie* a house is real estate belonging to the owner of the land upon which it stands.    The exception to this rule obtains only when a building is erected upon the land of another, for a special purpose, by written or parol agreement between the parties that the builder has the right to remove the building at pleasure.    Tested by this rule, the judgment should be reversed, as the evidence unmistakably fixed the house permanently on the acre of land referred to, and prescribed its use in case it was abandoned as a school.

The duties and powers of school trustees are limited (see § 4005, code of 1892), and our statutory laws neglected to clothe patrons and citizens of a school district with authority to sell property belonging to other people.    The law and evidence unmistakably fix the legal rights of the parties, and the court below should have given the peremptory instruction asked by appellants.

*Williamson & Potter*, for the appellee.

If the house was put on Agnew's land with the agreement and understanding that he would deed the land to the county or to the trustees of the school, he nor his heirs can refuse or fail to make the deed and hold the house.    The people who put the house on the land under such circumstances had a right to tear it away without the consent of Agnew or his heirs.

After inducing the people to use the county money and their own to build the house on his land by promising to make deed and agreeing the house should never become his own for any

purpose, Agnew, the ancestor, if he were living, could not object to removal of the house after he refused or failed to make the deed; and if he had made the deed, according to the understanding, the people of the district had the right to remove the house and abandon the use of the acre of land. The plaintiffs have no greater rights than their ancestor would have, if living. Inheriting from him, they are parties to, and bound by agreements and contracts made by him relative thereto.

Jones was not a trespasser in going upon the acre of land where stood the house he had bought and paid for. The people and patrons of that school district had a right to go on that acre of land and to make or do what they pleased with the house, under the very agreement made with Agnew at the time it was put there. Agnew consented and agreed that the community should own the house and might go on this acre of land while the house stood there. The community chose to dispose of the house, and authorized Jones to go there and take the house away.

Argued orally by *Robert Lowry*, for the appellant, and by *C. M. Williamson*, for the appellee.

STOCKDALE, J., delivered the opinion of the court.

A. M. Agnew's agreement that he would make a deed to Hinds county to the acre of land on which the house was to be erected, was an irrevocable license for the purposes for which it was made, as long as the house was used for the purposes specified. The heirs of Agnew have all the rights, and no more, that their ancestor had.

The license, had the deed been made or not made, deprived the grantor of the possession and use of his land, only so far as was stipulated in the agreement or the deed, and only to those in whose favor and for whose use the license was given, and he is the owner and possessor against the balance of the world. One owning land over which others have the right of way, has

such property in the right of way as will support trespass. Am. & Eng. Enc. L., vol. 26, and cases there cited, p. 592.

If Mr. Agnew granted the license to build and use a school-house, the land to revert to him when the school was abandoned, then the license ended in September, 1894, and his heirs were the absolute owners in January, 1895, when appellee tore down the house. If the license was for the erection of a school-house, and when the school failed it was to stand there as a house of worship, no one had the right to sell or remove it while so used; and probably it still exists, for the same people have rebuilt a house, as the record shows.

If the land reverted when the school ceased, and the title of the house did not go with it, it must have remained in somebody, and by what legal process it got into the respectable gentlemen who met at Forest Hill seems to be a problem. The county had made no transfer, nor had Kelly, Hawkins or Agnew. If the gentlemen who met at Forest Hill had no title, Jones, the appellee, acquired none. They were all utter strangers to the whole transaction of building that house, and a meeting of school patrons in any corner of the county would have had the same right. Not one of them had contributed a cent to build it, nor did they patronize the school held there. Even if they had a title to the house, appellee could not enter without consent, except by process of law, and the minors did not consent. None but that community had a right to enter that house for any purpose, and that community only for the purposes of schools and worship. Agnew himself could not enter for any purpose but as above. No one would contend that the people of that community even could have held political meetings or lodge meetings in that house, nor on that acre of land, without Agnew's consent, because his grant did not include such purposes, and he still owned what he had not granted. It would seem that it was his duty to preserve that property inviolate for its proper uses, having induced the people to build

there, and particularly against people who would destroy it utterly—the grant was not for that purpose.

What is a trespass? Every entry upon the land of another, without lawful authority, is a trespass, though it only be trodden, and whether the land be inclosed or not, and no matter whether any damage be done or not. The gist of the action is the wrongful entry; whatever is done after that is but aggravation of damages. If a man's land be not inclosed, the law encircles it with an imaginary inclosure, to pass which is to break and enter his close. The mere act of breaking through this imaginary boundary constitutes a cause of action, as being a violation of the right of property. Waterman on Trespass, vol. 2, pp. 219, 220, sec. 810, citing many cases; Am. & Eng. Enc. L., vol. 26, p. 592.

While Agnew had no right to the house to occupy it for private use, he certainly had an interest in it as one of the builders and one of the community—to have it remain there as a schoolhouse and as a house of worship, and to have it remain in that place on his land, and his heirs were damaged by its removal.

It would be a dangerous doctrine to establish in this country, that those who deem themselves owners of any property situated on another's premises may enter without leave and take it without invoking the process of the law. Buildings are presumed to be part of the realty until the contrary is shown, and that must be done in the courts.

A squatter on public lands cannot remove his buildings, however temporary, without the consent of the man who entered the land from the government. *Welborn* v. *Spears*, 32 Miss., 138. It is a trespass to enter the land of another, without his consent, to take one's own personal property. *Heerman* v. *Vernoy*, 6 Johns., 5; *Blake* v. *Jerome*, 14 Johns., 406; *Newkirk* v. *Sabler*, 9 Barb., 652. In view of these principles, it was error in the court below to give instructions two and four. The latter instruction, four, is in these words: "If the jury believe from

the evidence that Mr. Agnew, the ancestor, agreed to make a deed to the acre of land on which the house was located, and it was agreed and understood that the house should never be the property of Mr. Agnew if put on the land, but should be for school purposes, or other public purposes, they must find for defendant.'' This instructs the jury that if a deed was agreed to be made by Agnew, without saying to whom or what sort of deed, and that Agnew was not to own the house, but it should be for school purposes, or other public purposes no matter what, then appellant had the right to enter and tear it down and take it away. The scope of this instruction is to license any man to enter any other man's land and tear down and carry away any house that the party in possession does not own. This instruction is not cured nor assisted by number two; it is subject to the same objection to a less extent.

*The judgment of the court below is reversed and the cause remanded.*

WOODS, C. J., concurs.   WHITFIELD, J., dubitatur.