CITY COUNCIL OF GREENVILLE *v.* WHITE *et al.*

(Division A.   Feb. 8, 1943.)

[11 So. (2d) 816.   No. 35257.]

D. S. Strauss, of Greenville, for appellants.

Farish, Keady & Branton, of Greenville, for appellees.

152

154

Argued orally by **D. S. Strauss**, for appellants, and by **H. P. Farish** and **W. C. Keady**, for appellees.

**McGehee, J.**, delivered the opinion of the court.

The question presented here for decision is the ownership of 88 bales of seed cotton and 550 bushels of corn, harvested by the appellee from land which the appellant had recently leased to the federal government as a site for the location and construction of a United States Army Airport without expressly reserving, under the terms of the written lease or otherwise, the growing crops thereon, and which leased premises were then being expeditiously converted to such use.

The material facts are not in dispute. The City Council of Greenville, acting pursuant to legislative authority, purchased certain tracts of Delta farm land located a short distance from the corporate limits of the city, consisting of nearly two thousand acres, to be leased to the United States of America as a military reservation and airport. There was included in the area so purchased a tract of 1,281 acres acquired by warranty deed from George Metcalfe and wife on which this cotton and corn were then being grown in an unmatured state. It is admitted that the title to these crops passed to the City of Greenville under the warranty deed, not having been reserved by the grantors therein. Moreover, the grantors

were paid the sum of more than $8,000 as reimbursement to them for expenses incurred in the planting and cultivating of such crops, in addition to the purchase price of approximately $100 per acre for the land. Possession was delivered to the grantee on or about the middle of June, 1941, and the conveyance was executed shortly thereafter.

In the meantime on June 23, 1941, this land was leased to the Federal Government as aforesaid subject to renewal annually for a period of ninety-nine years, "to be used exclusively for a military reservation and airport, United States Army Airport." The lessee forthwith entered into the exclusive possession and occupancy of the leased premises and began cutting down, ploughing under and otherwise destroying growing crops in order to lay out airport runways, establish building sites, and to get the ground fully prepared for the purpose aforesaid. It was evidently contemplated that the lessee should have the right to destroy all of the crops then growing on the leased premises if deemed expedient or desirable in the full use and enjoyment of its rights under the lease to construct and operate such a military enterprise.

At the time of the execution of the lease contract, it appears from the testimony of the mayor, as witness on behalf of the appellant, that he thought the government might need to destroy the crops on the entire field, and not knowing where the construction work would start or over what area it would spread before the completion of the project, nothing was done by the appellant toward cultivating or attempting to preserve any of the crops on the land covered by the lease. No request was made at any time of the government officials in charge for permission on behalf of the lessor to salvage any of the crops, except that the mayor of the city, some thirty days after the cotton-picking season had opened, asked these officials to allow the appellee, W. G. White, to enter upon the premises and gather such of the crops as he should desire,

intending that he should do so in his own right and the request being based upon the fact that the said White and his wife had "made definite concessions in establishing the northern boundary line between their property and that of the army air base." And this permission was accordingly granted by the government's agents in charge "so long as it did not interfere with the construction operations." It seems that these army officials were under the erroneous impression that the appellee, White, was to salvage the crops as the agent of the City Council, having overlooked the written suggestion of the mayor that White should be granted the right because of the definite concessions made in regard to his land line, as aforesaid.

At any rate, if it be assumed that the officials of the government, with full authority, granted the mayor permission to enter upon the land on behalf of the City of Greenville and harvest such crops as were not destroyed in the establishment of the airport, although they were not reserved under the lease, the license was never exercised. Apparently the City Council, as a whole, knew nothing about it; nor was there any meeting of the minds of the mayor and the federal authorities on whether the authority to enter upon the land and salvage a portion of the crops was to be granted to the appellee in his own right or as a representative of appellant. The mayor neither made the request nor intended to exercise the license on behalf of the city, but undertook to serve merely as an intercessor between the appellee and these officials in order that the appellee might act in his own right. Neither is it claimed that either the mayor or the appellee understood or intended that he was to act as the representative of the City Council in the matter, and, as heretofore stated, the other Councilmen were not advised in the premises.

While the mayor of the municipality was without authority to give away any of its property, it is also true that his action in this instance, together with the failure

of the City Council as a whole to take any steps to salvage these crops until after the appellee had harvested them and stored the cotton in the compress, plus the further fact that they permitted such of the matured crops as were not salvaged by the appellee to go to waste and ruin on the land not then being used in the prosecution of the airport construction work, and had not retained or subsequently acquired any rights of ingress and egress in its own behalf for such purpose, clearly discloses a total absence of any intention whatever on the part of the lessor at the time of the execution of the lease to reserve such of the crops as should mature before it would become necessary for the lessee to destroy them in the exercise of its rights under the lease.

In 36 C. J. 106, it is stated that "where no prior tenant has a valid claim to the growing crops as emblements, such crops generally pass to the lessee having the right to immediate possession under his lease." This seems to be the well settled rule in regard to unmatured crops, such as those here involved were at the time of the execution of the lease in question. In the case of Frishkorn v. Ogden, 16 Ala. App. 358, 77 So. 970, 971, the court said: "It is well settled that a lease, like any other conveyance of a present estate in land, transfers to the lessee the right to the unmatured vegetable products growing upon the land at the time, unless they are expressly excepted from its operation. 2 Tiffany, Landlord & Tenant, sec. 249; Edwards v. Perkins, 7 Or. 149; Willey v. Conner, 44 Vt. 68; Emery v. Fugina, 68 Wis. 505, 32 N. W. 236. Under the rule the crops passed to the lessee, Ogden." Other decisions are cited to the same effect in the footnote under Section 249 of 2 Tiffany, Landlord and Tenant. Our attention has been called to no cases to the contrary, except that our own investigation discloses that a few courts have upheld an oral reservation of a growing crop under a lease. Such a reservation would involve the application of the parol evidence rule under our decisions as relating to a general warranty, but in the case at bar

no oral reservation is claimed. On the other hand, it is contended by the lessor in effect that there was an implied reservation of such crops, if any, that were not destroyed in the exercise of the right granted unto the lessee; that the lease is not a general one, but that the lessee is limited to utilizing the premises for the exclusive purpose of establishing a military reservation and airport; and that it therefore acquired only the right to destroy such portion of the crops as was necessary in the enjoyment of the rights expressly conferred. This argument is not without some force, but we are of the opinion that the limitation as to the purpose for which the premises were to be used is not a limitation as to what property passed under the lease. For instance, the limitation may be invoked to prevent the establishment of an enemy concentration camp thereon or any other project of a different character to that exclusively authorized by the terms thereof, but it should not be construed as a reservation of specific property which would ordinarily pass to the lessee in the absence of a provision to the contrary.

It is next urged that the appellee is not in position to dispute the city's title to the crops after having harvested the same under a license from the mayor, whether the license so to do was valid or not. The answer to this contention is that when the title of the property in controversy is in the government, the alleged tenant or licensee of some one else is not bound by the rule which forbids him to dispute the title of him by whose permission he enters upon the premises, since to so hold would be violative of public policy. Ellis v. Sutton, 126 Miss. 102, 85 So. 519; Welder v. McComb, 10 Tex. Civ. App. 85, 30 S. W. 822.

While the federal authorities who obtained the lease may not have intended to acquire on behalf of the government any beneficial interest in these crops as property of value, but rather the mere right to destroy such of them as were on that portion of the land being actually

appropriated to the purpose of the lease, it is equally true that at the time of the execution of the lease the City Council did not intend to reserve the same. It is clearly established by the testimony that when the further cultivation of a crop in the Delta is abandoned at that season of the year one does not expect it to mature; that in the instant case the maturity of this cotton in its abandoned state was most unusual, and therefore not anticipated when the lease was made; that it was due to a rare crop season, followed by an infestation of army worms which enabled the rays of the sun to reach the stalks underneath a mass of tie-vines, cockleburs, coffee weeds, and other extraneous growth; and, wherefore, the appellant manifested no concern about the cotton and corn being salvaged by appellee until he had incurred an expense in excess of $3,500 and completed his harvest. Nor did the appellant make any effort to save such portion of the matured crops as were not gathered by the appellee on the land which had not then been appropriated by the government to the purposes of the lease.

Unless the fact that the lessor is a municipal corporation instead of an individual prevents the application of the rule, the decision of which question is unnecessary here and therefore pretermitted, the appellee would be entitled to hold the crops under the facts of the case on the theory of an abandonment by the appellant; but we prefer to rest the decision on the ground that the unmatured crops pass to the lessee of the land where the same are not reserved; that the right of action for injury to the possession, as distinguished from an injury to the reversionary interest, during the term of the lease belongs exclusively to the lessee; that ''the landlord's rights, after the tenant's entry, are confined to the protection of his reversionary interest merely—that is, to the maintenance of actions for such injuries as would, in the ordinary course of things, continue to affect such interest after the determination of the lease—whether the injury is committed by a tenant, an undertenant, or a stranger,

and whether the term shall have expired or not." 32 Am. Jur., Sec. 78, p. 91; 35 C. J., Sec. 540, p. 1212; 16 R. C. L., Sec. 106, p. 624, 2 Tiffany, Landlord and Tenant, Sec. 352, and Collins v. Wheeless, 171 Miss. 263, 157 So. 82.

The case of Agnew v. Jones, 74 Miss. 347, 23 So. 25, relied on by appellant, recognizes the right of a landowner, who consents to the construction of a building on his land to be used for a schoolhouse and a place of worship, to maintain an action of trespass against those who enter upon the land and remove the building without the landowner's consent, but the real basis for the recovery of actual damages would be the fact that the trespass resulted in an injury to the reversionary interest, since the building as realty would remain with the freehold in the event it ceased to be used for the purposes specified. Any other damages for the mere trespass alone is recoverable by him who has the possession or right of possession. The decision is not applicable to the case here under consideration, since no trespass involving an injury to the reversionary interest is complained of in the case at bar.

The appellant also invokes the rule that a conveyance by the sovereign must be construed most strongly in its favor, so that nothing will pass to the grantee or lessee except that which is expressly conveyed. But, even so, the sovereign in the lease here involved is the federal government as lessee, not the municipality as lessor.

Finally, it is urged that the appellee is a mere intruder, having acquired no valid title from any source whatsoever to the property in controversy, and that he should not, therefore, be allowed to retain the crop as against the appellant, the owner of the land. This contention, however, overlooks the fact that the burden of proof is upon the City Council as complainant to establish its own title to these crops as a condition precedent to its right to recover the same, or the value thereof, from the defendant White, who harvested the same in good faith and

has an interest therein at least to the extent of his expenses, if not the ownership.

The decree of the court below dissolving the injunction against the negotiation of the warehouse receipts and dismissing the bill of complaint must therefore be affirmed.

Affirmed.