# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00631-COA

**BRIDGE PROPERTIES OF LAFAYETTE, LLC AND BRIDGE PROPERTIES OF MISSISSIPPI, LLC**　　　　　　　　　　**APPELLANTS**

**v.**

**1000 JEFFERSON, LLC AND COREY A. ALGER**　　　　　　**APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/07/2022 |
| TRIAL JUDGE: | HON. ROBERT Q. WHITWELL |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | SHELDON G. ALSTON ROBERT LANE BOBO |
| ATTORNEY FOR APPELLEES: | WALTER ALAN DAVIS |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 06/20/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.　　Bridge Properties of Lafayette LLC and Bridge Properties of Mississippi LLC (collectively "Bridge Properties") filed a complaint against 1000 Jefferson LLC and Corey A. Alger (collectively "1000 Jefferson") alleging claims of trespass and a prescriptive easement and seeking injunctive relief. At trial, 1000 Jefferson moved to dismiss Bridge Properties' complaint pursuant to Mississippi Rule of Civil Procedure 41(b), and the Lafayette County Chancery Court granted the motion. Bridge Properties filed a motion to alter or amend the judgment, which the chancellor denied.

¶2.　　Bridge Properties now appeals from the chancellor's order dismissing its complaint

and the order denying its motion to alter or amend the judgment. On appeal, Bridge Properties asserts the following assignments of error: (1) the chancellor erred in finding that Bridge Properties did not have standing to pursue its trespass claim, (2) the chancellor erred in granting the Rule 41(b) motion to dismiss, and (3) the chancellor erred by failing to find 1000 Jefferson in contempt.

¶3. Finding no error, we affirm the chancellor's orders dismissing Bridge Properties' complaint and denying the motion to alter or amend the judgment.

## FACTS

¶4. In 2007, Bridge Properties acquired title to 1002 Jefferson Avenue and 915 Jefferson Avenue in Oxford, Mississippi. The record shows that the property at 1002 Jefferson was leased to a commercial tenant, BankFirst Mortgage, who maintained possession of the property at all times relevant to this action.

¶5. In 2018, Corey Alger acquired the property located at 1000 Jefferson Avenue, Oxford, Mississippi. The record reflects that 1000 Jefferson is the neighboring property directly to the west of 1002 Jefferson. Alger later conveyed his property to 1000 Jefferson LLC, and in 2021, 1000 Jefferson commenced construction of multi-level residential condominiums.

¶6. Alger claimed that prior to the start of construction at 1000 Jefferson, he had a conversation about the impending construction work with Tonquin Stovall, a representative of Bridge Properties' tenant, BankFirst Mortgage. According to Alger, Stovall gave general permission for 1000 Jefferson to have reasonable access to the property at 1002 Jefferson for

2

the purpose of performing construction work at 1000 Jefferson.[1] Alger also testified that at no time did Stovall or anyone else on behalf of BankFirst Mortgage ever withdraw that permission.

¶7. After Bridge Properties discovered that Stovall gave permission for 1000 Jefferson to have access to 1002 Jefferson during construction, Bridge Properties hand-delivered a letter to Stovall in February 2021 stating that BankFirst Mortgage had breached its lease agreement by permitting "construction activity" on the property. In the letter, Bridge Properties also demanded that BankFirst Mortgage withdraw the permission given to 1000 Jefferson for construction activity. Bridge Properties threatened to cancel BankFirst Mortgage's lease if it did not comply. The letter further stated that Bridge Properties "reserved the right to take possession" of the property back from BankFirst Mortgage. The record reflects that Bridge Properties never took possession of the property back from BankFirst Mortgage.

¶8. In March 2021, construction workers at 1000 Jefferson damaged a buried sewer line that serviced 1002 Jefferson Avenue. As a result of this damage, Bridge Properties obtained a preliminary injunction and temporary restraining order against 1000 Jefferson. The injunction and restraining order prevented further construction activity along the property line. At a subsequent hearing, the parties reached an agreement for 1000 Jefferson to perform work that would address the issues raised in the injunction and temporary restraining

---

[1] Stovall did not testify at trial.

order. Per the agreement, 1000 Jefferson received a "limited right" to enter the property at 1002 Jefferson in order to backfill the voids on the property. 1000 Jefferson agreed to notify Bridge Properties' civil engineer at least twenty-four hours in advance of any work to be performed along the boundary of the properties. The parties' agreement resolved Bridge Properties' claims for injunctive relief, and the agreement was ultimately adopted as an order of the chancery court on March 26, 2021.

¶9.     On March 16, 2021, Bridge Properties filed a complaint against 1000 Jefferson for prescriptive easement, trespass, and injunctive relief arising out of 1000 Jefferson's trespass at 1002 Jefferson. (The issues before us on appeal pertain only to the trespass action and the later contempt action, and we will limit our discussion to these issues.) In the complaint, Bridge Properties alleged that during the excavation and construction of the condominiums at 1000 Jefferson Avenue, 1000 Jefferson crossed the boundary line between the two properties and damaged the property at 1002 Jefferson. 1000 Jefferson filed an answer and counter-claim denying it was liable for trespass.

¶10.    On May 5, 2021, Bridge Properties petitioned the chancery court for an order holding 1000 Jefferson in civil contempt or, alternatively, constructive-criminal contempt for its failure to comply with the March 26, 2021 agreed order. In its motion, Bridge Properties claimed that 1000 Jefferson failed to notify Bridge Properties' civil engineer twenty-four hours prior to entering the property at 1002 Jefferson Avenue and that 1000 Jefferson failed to enter the property solely for the purpose of backfilling the voids on the property.

4

¶11. A trial was held in December 2021. At the close of Bridge Properties' case-in-chief, 1000 Jefferson made an ore tenus motion to dismiss Bridge Properties' complaint under Rule 4l(b). 1000 Jefferson argued that Bridge Properties was an out-of-possession owner and therefore had no standing to assert a trespass claim. The chancellor took the matter under advisement.

¶12. On February 7, 2022, the chancellor entered a final judgment granting 1000 Jefferson's motion and dismissing Bridge Properties' complaint. In the order, the chancellor found that Bridge Properties did not have standing to pursue its trespass claim because, based on its lease agreement with BankFirst Mortgage, Bridge Properties was a "lessor out of possession." The chancellor further held that even if Bridge Properties were a lessor in possession, its trespassing claim failed because the evidence showed that BankFirst Mortgage gave permission to 1000 Jefferson to be on the property at 1002 Jefferson Avenue, and BankFirst Mortgage never revoked that permission.

¶13. In the order, the chancellor also denied Bridge Properties' motion for contempt. The chancellor explained that 1000 Jefferson entered the property at 1002 Jefferson in furtherance of the March 26, 2021 agreed order and that 1000 Jefferson's actions in entering the property were not willful, deliberate, or contumacious conduct such that sanctions would be warranted. The chancellor also held that because Bridge Properties lacked standing to bring the trespass action, the chancellor lacked subject matter jurisdiction to rule on the trespassing claims in the March 26, 2021 agreed order.

¶14.    Bridge Properties filed a motion to alter or amend the judgment pursuant to Mississippi Rule of Civil Procedure 59(e), arguing that the chancellor's ruling made a "substantial factual error"—namely, that 1000 Jefferson damaged real property not covered by Bridge Properties' lease agreement with BankFirst Mortgage, and that BankFirst Mortgage did not have authority to provide the permission that Bridge Properties relied on as a defense to their trespass.  Bridge Properties also argued that 1000 Jefferson blatantly and repeatedly violated the terms of the March 26, 2021 agreed order and therefore should be held in contempt.  In support of its motion, Bridge Properties attached an affidavit from Tonquin Stovall.

¶15.    1000 Jefferson filed an opposing motion and asserted that Bridge Properties failed to meet the standard required for obtaining relief pursuant to Rule 59(e).  1000 Jefferson explained that Bridge Properties did not argue that there has been an intervening change in controlling law or that there is a need to correct "a clear error of law" to prevent manifest injustice or otherwise.  1000 Jefferson asserted that although Bridge Properties attempted to present new evidence in the form of Stovall's affidavit, Bridge Properties did not argue that Stovall's affidavit constitutes new evidence that was not previously available.

¶16.    1000 Jefferson further argued that at no time prior to or during the trial did Bridge Properties claim that BankFirst Mortgage's lease agreement only applied to the actual building and not the rest of the premises of 1002 Jefferson.  1000 Jefferson asserted that the facts and the course of conduct by Bridge Properties confirmed that it considered the entire

6

property at 1002 Jefferson to be subject to the lease agreement with BankFirst Mortgage.

¶17. The chancellor entered an order denying Bridge Properties' motion to alter or amend the judgment after finding that Bridge Properties failed to show any intervening change in controlling law, new evidence, or the need to correct any clear error that could warrant reconsideration under Rule 59(e). *See Brooks v. Roberts*, 882 So. 2d 229, 233 (¶15) (Miss. 2004). The chancellor also addressed the arguments set forth in Bridge Properties' motion. The chancellor found no merit to the claim regarding standing, explaining that "Bridge Properties now take[s] the position that [its] lease with BankFirst [Mortgage] was only for the building itself and not the curtilage or surrounding property. This is not the position taken at trial." The chancellor also found no merit to Bridge Properties' assertion that Stovall's affidavit was newly discovered evidence, explaining that "Stovall was identified as a witness in discovery and was not called. He was also the recipient of the letter from [Bridge Properties] threatening cancellation of his lease for giving [1000 Jefferson] permission to enter upon 1002 Jefferson." Finally, the chancellor found that "[t]here is no basis to amend this [c]ourt's judgment with regard to its finding that [Bridge Properties] [was] not entitled to relief on [its] claims of contempt."

¶18. This appeal followed.

## STANDARD OF REVIEW

¶19. Mississippi Rule of Civil Procedure 41(b) governs involuntary dismissals and provides that "[a]fter the plaintiff, in an action tried by the court without a jury, has

7

completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief." The chancery court "should grant a motion for involuntary dismissal if, after viewing the evidence fairly, rather than in the light most favorable to the plaintiff, the judge would find for the defendant." *Gulfport-Biloxi Reg'l Airport Auth. v. Montclair Travel Agency Inc.*, 937 So. 2d 1000, 1004 (¶13) (Miss. Ct. App. 2006). This Court has also held that a Rule 41(b) motion "should be granted if the plaintiff has failed to prove one or more essential elements of his claim or if the quality of the proof offered is insufficient to sustain the plaintiff's burden of proof." *Lewis v. Lewis*, 269 So. 3d 230, 235 (¶14) (Miss. Ct. App. 2018) (quoting *Buelow v. Glidewell*, 757 So. 2d 216, 220 (¶12) (Miss. 2000)). When reviewing a chancellor's grant of a Rule 41(b) motion for involuntary dismissal, "we apply the substantial evidence/manifest error standards." *Gulfport-Biloxi Reg'l Airport Auth.*, 937 So. 2d at 1005 (¶13).

¶20.    As for motions filed pursuant to Mississippi Rule of Civil Procedure 59(e), the Mississippi Supreme Court has established that "in order to succeed on a Rule 59(e) motion, the movant must show: (i) an intervening change in controlling law, (ii) availability of new evidence not previously available, or (iii) need to correct a clear error of law or to prevent manifest injustice." *Brooks*, 882 So. 2d at 233 (¶15). We "review[] a trial court's denial of a Rule 59 motion under an abuse of discretion standard." *Id.*

## DISCUSSION

8

## I. Trespass Claim

¶21. Bridge Properties argues that the chancery court erred in finding that it did not have standing to pursue its trespass claim against 1000 Jefferson. Bridge Properties submits that the allegations in its complaint assert "a colorable interest in the subject matter of the litigation"; specifically, that 1000 Jefferson's actions adversely affected Bridge Properties' property rights. Bridge Properties asserts that it presented "substantial evidence of a permanent injury" to its property, and therefore the chancellor erred in finding that Bridge Properties did not have standing to maintain the trespass claim.

¶22. "Standing is a jurisdictional issue that is satisfied when there is a valid, present, and complete cause of action in existence along with a *right to relief* upon institution of the suit." *Holmes v. Lankford*, 358 So. 3d 645, 651 (¶17) (Miss. Ct. App. 2023) (emphasis added) (quoting *Jourdan River Ests. LLC v. Favre*, 278 So. 3d 1135, 1146 (¶40) (Miss. 2019)). "Because it is a jurisdictional issue, [standing] may be raised by the Court or the parties at any time." *Id.* (citing *Kirk v. Pope*, 973 So. 2d 981, 989 (¶22) (Miss. 2007)). We review questions of standing de novo. *Trigg v. Farese*, 266 So. 3d 611, 617 (¶9) (Miss. 2018).

¶23. We recognize that "[s]tanding is different than capacity, which concerns the formal ability of a party to sue or to be sued." *Favre*, 278 So. 3d at 1146 (¶41). The supreme court has distinguished between the "standing to sue" and "the capacity to sue," explaining that "the capacity to sue is the right to come into court[;] . . . [and] standing to sue . . . is a right to relief, which goes to the existence of the cause of action." *Id.* (quoting *Burley v. Douglas*,

26 So. 3d 1013, 1025-26 (¶45) (Miss. 2009)). "Parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law." *Holmes*, 358 So. 3d at 651 (¶17). "Standing must exist when litigation is commenced and must continue through all subsequent stages of litigation, or the case will become moot." *Hotboxxx LLC v. City of Gulfport*, 154 So. 3d 21, 28 (¶24) (Miss. 2015). "A lack of standing robs the court of jurisdiction to hear the case." *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 826 (¶32) (Miss. 2009) (internal quotation marks omitted).

¶24. Relevant to the case before us, the supreme court has held that "*the right to sue* for an unlawful injury to possession [of a premises] is lodged in the tenant[,] not the landlord." *Meyn v. City of Gulfport*, 570 So. 2d 1198, 1201 (Miss. 1990) (emphasis added). The supreme court explained:

> So far as concerns the possession and use of leased premises, the lease operates as a demise or conveyance of the property for a specific period of time, and no right of possession or use remains in the lessor. . . . The rule of law, therefore, logically follows and is well established that *the landlord cannot maintain an action for an injury to the possession*, as distinguished from the freehold, *the right to sue being in the tenant*.

*Id*. (emphasis added) (citation omitted) (quoting *Collins v. Wheeless*, 171 Miss. 263, 267-68, 157 So. 82, 83 (1934)).

¶25. Regarding trespass specifically, this Court has held that "an owner who is out of possession cannot maintain trespass." *Thomas v. Harrah's Vicksburg Corp.*, 734 So. 2d 312, 319 (¶17) (Miss. Ct. App. 1999). Stated differently, "a landlord cannot sue for a mere

10

trespass to land in the occupation of his tenant." *Id*. In *Thomas*, we explained that a landlord out of possession can, however, maintain an action "for the injury to the reversion; but, in order to maintain it, he must show more than the trespass—namely, actual permanent harm to the property of such sort as to affect the value of his interest." *Id*. The supreme court has also held that after a tenant has taken possession of the property, the out-of-possession property owner's rights "are confined to the protection of his reversionary interest merely—that is, to the maintenance of actions for such injuries as would, in the ordinary course of things, continue to affect such interest after the [term expires] . . . ." *City Council of Greenville v. White*, 194 Miss. 145, 160-61, 11 So. 2d 816, 819 (1943). In *White*, the supreme court reiterated that "[a]ny other damages for the mere trespass alone is recoverable by him who has the possession or right of possession." *Id*.

¶26. In the present case, the chancellor dismissed Bridge Properties' trespass claim after finding that Bridge Properties constituted a "lessor out of possession" and therefore had no right to assert claims of trespass against 1000 Jefferson. The chancellor explained that the evidence was undisputed that throughout the relevant period in this case, the property of 1002 Jefferson was in the possession of Bridge Properties' tenant, BankFirst Mortgage. The chancellor found that pursuant to the lease agreements, BankFirst Mortgage was entitled to possession of the property upon the first day of the lease and would retain possession until the last day of the lease. The chancellor acknowledged that the lease agreements contained a restriction as to the property's use, but the chancellor found that this did not restrict

11

BankFirst Mortgage's possession of the property. Additionally, the chancellor also found that Bridge Properties failed to present evidence of any permanent injury resulting from the alleged trespass.

¶27. Our review of the record reflects that two lease agreements between Bridge Properties and BankFirst Mortgage (along with its representative Tonquin Stovall) were admitted into evidence. The terms of the lease agreements state that BankFirst Mortgage, as the tenant, "shall be entitled to possession on the first (1st) day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this lease, unless otherwise agreed to by both parties in writing." The lease agreements confirm that BankFirst Mortgage was in continuous possession of the property at 1002 Jefferson during the time period relevant to this case.

¶28. Additionally, although the lease agreements state that Bridge Properties "leases to Tenant one (1) commercial building located at 1002 Jefferson Avenue[,]" the chancellor found that the lease agreements encompassed the entire premises and not just the commercial building. The chancellor's finding is supported by the record. At trial, Alex Bridge testified that the parking spaces at 1002 Jefferson are only for the use of BankFirst Mortgage and its customers. When asked, "Is that another term of that lease?" Bridge answered "Yes," and he explained that Bridge Properties "provided a notice to Mr. Tonquin Stovall citing . . . [the] lease, [and stating] that he is not allowed to allow third parties to utilize our property." Bridge was referring to the February 24, 2021 letter from Bridge Properties to BankFirst

Mortgage and Stovall regarding Stovall's granting 1000 Jefferson permission to be on the property. In this letter, Bridge Properties refers to the leased premises as "1002 Jefferson Avenue" and not just the commercial building. Based on the facts before us, we agree that Bridge Properties constituted a landlord out of possession.

¶29. Our caselaw clearly states that as a landlord out of possession, Bridge Properties cannot maintain an action for "mere trespass" of the land occupied by its tenant. *Thomas*, 734 So. 2d at 319 (¶17). Additionally, "damages for the mere trespass alone is recoverable by him who has the possession or right of possession"—in this case, BankFirst Mortgage. *White*, 194 Miss. at 161, 11 So. 2d at 819. The supreme court has clarified that

> the issue adjudicated in a standing case is whether the particular plaintiff had a right to judicial enforcement of a legal duty of the defendant or . . . whether a party plaintiff in an action for legal relief can show in himself a present, existent actionable title or interest, and demonstrate that this right was complete at the time of the institution of the action.

*City of Picayune v. S. Reg'l Corp.*, 916 So. 2d 510, 526 (¶40) (Miss. 2005). Because Bridge Properties cannot recover damages for mere trespass of the land occupied by its tenant, Bridge Properties has no right to relief, and therefore no standing. We accordingly find that Bridge Properties lacked standing to sue 1000 Jefferson for trespass.

¶30. Although we find that, based upon the facts of this particular case, Bridge Properties lacks standing to bring an action for trespass, our caselaw does provide for a landlord out of possession to maintain an action to protect its reversionary interest. *White*, 194 Miss. at 160, 11 So. 2d at 819. As stated above, in order to assert such action, Bridge Properties "must

13

show more than the trespass—namely, actual permanent harm to the property of such sort as to affect the value of his interest." *Thomas*, 734 So. 2d at 319 (¶17). Here, the chancellor found that Bridge Properties failed to present evidence of any permanent injury resulting from the alleged trespass, and therefore Bridge Properties failed to establish a claim for damage to its reversionary interest.

¶31. On appeal, Bridge Properties maintains that it presented "substantial evidence of a permanent injury . . . which could entitle [Bridge Properties] to a judgment" on the trespass claim. In support of its assertion, Bridge Properties points to the March 16, 2021 affidavit from John Granberry, a licensed civil engineer, and also testimony from Alex Bridge, the managing partner for Bridge Properties, regarding the sod and the property line. Bridge Properties argues that "[e]ach of these considerations, taken together, constitute permanent harm to the property that affects [Bridge Properties'] property rights."

¶32. Turning to the evidence, we find that in his March 16, 2021 affidavit, Granberry addressed the concerns that he observed with 1000 Jefferson's construction plans and after he visited the construction site. Granberry opined as follows:

> Without a proper construction easement and sufficient compaction equipment and testing, which should have been retained prior to the beginning of construction, there is no way to properly reinstall the soil such that it would be in a preconstruction, undamaged state. Given the close proximity to the property line, special construction practices and vibration monitoring needed to occur.

However, Granberry stated in his affidavit that he inspected the property nearly eight months prior to trial. Additionally, the trial transcript reflects that Granberry did not render any

14

testimony or opinion as to any permanent damage to the property at 1002 Jefferson.

¶33.    Alex Bridge testified at trial that after 1000 Jefferson completed its excavation and dirt removal, 1000 Jefferson then re-sodded the property at 1002 Jefferson to repair any damages caused by the construction.  However, Bridge asserted that 1000 Jefferson failed to clean the property prior to re-sodding, and as a result, the workers laid the sod upon construction debris and poorly graded dirt.  Bridge testified that the sod would need to be removed, the debris would need to be cleaned up, the dirt would need to be re-laid to improve drainage, and then the sod would need to be replaced.  On appeal, Bridge Properties maintains that at the time of trial, this remediation work had not been completed and therefore constituted "potentially permanent damage" to the property at 1002 Jefferson.  Bridge further testified that the continued and habitual trespass of his property risked the loss of his property rights moving forward, explaining that "if you don't protect your [property] lines, you're liable to lose them."

¶34.    However, when asked, "Is there any permanent damage along that property line as a result of these trespassing that you're claiming?" Bridge responded, "None that I'm aware of."  Counsel for 1000 Jefferson then specifically asked, "Is there any damage permanent to that piece of real estate?" (referring to 1002 Jefferson), and Bridge admitted that he was not aware of any permanent damage.  Bruce Massey, the contractor for 1000 Jefferson, also testified that he had repaired and cleaned everything on the property at 1002 Jefferson that Bridge Properties had requested of him.  Massey also testified that as far as he knew, the

15

construction work at 1000 Jefferson had caused no permanent damage to the property at 1002 Jefferson.

¶35. Our review of the record and the transcript shows that Bridge Properties failed to show any actual permanent damage to its property.[2] Because Bridge Properties lacked standing to bring the trespass action against 1000 Jefferson, and because Bridge Properties failed to show "actual permanent harm" to the property that would affect the value of Bridge Properties' interest, we find that dismissal was proper. *See Lewis*, 269 So. 3d at 235 (¶14) (A Rule 41(b) motion "should be granted if the plaintiff has failed to prove one or more essential elements of his claim or if the quality of the proof offered is insufficient to sustain the plaintiff's burden of proof."). Because we find that the chancellor did not err by granting 1000 Jefferson's Rule 41(b) motion for involuntary dismissal, we affirm.

## II.    Contempt

¶36. Bridge Properties next argues that the chancellor erred by not finding 1000 Jefferson in contempt of the March 26, 2021 agreed order. Bridge Properties asserts that the evidence

---

[2] During oral argument, Bridge Properties asserted that its unjust enrichment claim set forth in the amended complaint was related to its trespass claim in terms of proving actual permanent damage. The trial transcript reflects that Bridge Properties' argument at trial regarding unjust enrichment was related to its prescriptive easement claim, which is not before us on appeal. The supreme court "has repeatedly held that an issue not raised before the lower court is deemed waived and is procedurally barred." *Pub. Emps.' Ret. Sys. v. Freeman*, 868 So. 2d 327, 330 (¶9) (Miss. 2004); *see also Parker v. Ross*, No. 2020-CT-01055-SCT, 2023 WL 3240228, at *3-4 (¶¶16-19) (Miss. May 4, 2023). Furthermore, Bridge Properties did not raise any argument regarding unjust enrichment in its appellate brief. "The law is well established that points not argued in the brief on appeal are abandoned and waived." *Summers v. Gros*, 319 So. 3d 479, 485 (¶21) (Miss. 2021).

16

at trial showed a "litany of undisputed trespasses" by 1000 Jefferson and that based on these habitual trespasses, the chancellor should have concluded that 1000 Jefferson willfully and deliberately ignored the March 26, 2021 agreed order.

¶37.   We recognize that "[c]ontempt matters are committed to the substantial discretion of the trial court." *Gutierrez v. Gutierrez*, 153 So. 3d 703, 713 (¶31) (Miss. 2014). To determine the appropriate standard of review of a contempt matter on appeal, we must first determine "whether the contempt is criminal or civil." *Seals v. Stanton*, 350 So. 3d 1051, 1058 (¶19) (Miss. 2022). In the case before us, Bridge Properties petitioned the chancellor to find 1000 Jefferson in civil contempt or, in the alternative, constructive-criminal contempt. However, on appeal, Bridge Properties appears to have abandoned its claim of constructive-criminal contempt and instead focuses its argument on civil contempt.[3] "With respect to a finding of civil contempt, the factual findings of the chancellor are affirmed unless manifest error is present and apparent." *Savell v. Manning*, 325 So. 3d 1208, 1220 (¶43) (Miss. Ct. App. 2021) (internal quotation marks omitted).

¶38.   The supreme court has held that when defending against a civil-contempt claim, "a party can argue that his or her violation of the court's order was not willful or deliberate as to be labeled 'contumacious.'" *Gutierrez*, 153 So. 3d at 713 (¶31). "[T]he party's honest inability to perform according to the dictates of the order or decree" can also serve as a

---

[3] "The law is well established that points not argued in the brief on appeal are abandoned and waived." *Summers*, 319 So. 3d at 485 (¶21).

defense to a claim for civil contempt. *Id.*

¶39. In its motion requesting that the chancellor find 1000 Jefferson in contempt, Bridge Properties alleged that 1000 Jefferson violated the following terms of the March 26, 2021 agreed order:

> 4. [1000 Jefferson] [is] given a limited right to enter the property of [Bridge Properties] in order to complete the plan in the Court Ordered Proposal by backfilling the voids on the property. [1000 Jefferson] shall not enter upon [Bridge Properties'] property for any other reason, without written permission from [Bridge Properties].

> 5. The engineer for [1000 Jefferson], Brian P. Byers, shall notify the engineer for [Bridge Properties], John Granberry, at least 24 hours in advance of any work to be done along the boundary between the parties.

Bridge Properties asserted that workers from 1000 Jefferson entered the property at 1002 Jefferson to construct a "soldier pile" retaining wall without providing notice to Granberry or asking for permission from Alex Bridge.

¶40. In its order denying the motion for contempt, the chancellor acknowledged Bridge Properties' claims that 1000 Jefferson violated the agreed order, but the chancellor found that the evidence showed that workers for 1000 Jefferson only crossed the boundary line between the two properties for the purpose of implementing the plan set forth in the agreed order (namely, to construct a soldier pile wall). In support of his ruling, the chancellor cited clause 3 of the agreed order, which required 1000 Jefferson to build a temporary retaining wall on the boundary of the two properties. The chancellor accordingly determined that all the "encroachments" upon the property at 1002 Jefferson were brief and minor and not willful,

18

deliberate, or contumacious.

¶41.    The chancellor also observed that the evidence showed that while 1000 Jefferson took steps to complete the plan in the agreed order, Bridge Properties "stood by to quickly document each and every occasion where a construction tool crossed the boundary line, even if briefly, before yelling 'trespass!'" The chancellor opined that Bridge Properties appeared to be playing a game of "gotcha" instead of being neighborly, and the chancellor commented that he found Bridge Properties' conduct troubling.

¶42.    Additionally, the chancellor found that because Bridge Properties lacked standing to bring the trespass action in the first place, the chancery court accordingly lacked subject matter jurisdiction to enter the trespass provisions of the agreed order. The chancellor acknowledged that "standing could only be determined in hindsight once the question of permanent[] damage was resolved," and he explained that at the time when the agreed order was entered, Bridge Properties alleged that 1000 Jefferson's trespass had resulted in actual permanent damage to its property. However, as stated, Bridge Properties lacked standing to bring its claim for trespass. Furthermore, Bridge Properties failed to establish an action for damage to the reversion because it could not demonstrate actual permanent damage. The chancellor accordingly declined to find 1000 Jefferson in contempt.

¶43.    After our review, we find that the chancellor was within his discretion to find that although 1000 Jefferson crossed the boundary line and encroached upon the property at 1002 Jefferson, 1000 Jefferson's actions were not willful or deliberate, and the actions were for

the purpose of complying with the agreed order. We accordingly affirm the chancellor's denial of Bridge Properties' motion for contempt.

## CONCLUSION

¶44. After our review, we find that the chancellor did not err by dismissing Bridge Properties' complaint pursuant to Rule 41(b) or by denying Bridge Properties' motion for contempt. We likewise find that the chancellor did not abuse his discretion by denying Bridge Properties' motion to alter or amend the judgment pursuant to Rule 59(e). We therefore affirm these orders.

¶45. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**